**McTYRE v. UNITED STATES.**
No. 14598.

United States Court of Appeals,
Fifth Circuit.
May 20, 1954.

**66**

Malcolm E. Lafargue, Shreveport, La., for appellant.

Wm. J. Fleniken, U. S. Atty., E. V. Boagni, Asst. U. S. Atty., T. Fitzhugh Wilson, U. S. Atty., Shreveport, La., for appellee.

Before BORAH, STRUM and RIVES, Circuit Judges.

RIVES, Circuit Judge.

The appellant was tried, convicted, and sentenced to imprisonment for a term of eighteen months for violation of the Mann White Slave Traffic Act, 18 U.S. C.A. § 2421. The single count indictment charged simply:

"That on or about the 17th day of November, 1950, in the Shreveport Division, Western District of Louisiana, Davis Arvin McTyre did knowingly transport and cause to be

1. "Well, let's analyze things a little bit and see what the evidence is, Gentlemen.

"The Government has shown that this defendant and this woman were together early in 1950, and that she was engaged in the same activities, that is, prostitution, at that time, that he was bound to have known about. It has been shown

transported a woman, namely, Willodene 'Shirley' Woodall, in interstate commerce from Birmingham in the State of Alabama to Bossier City in the State of Louisiana for the purpose of prostitution and debauchery."

On this appeal we need consider only those specifications of error which complain of the district court's failure to sustain the defendant's motion for judgment of acquittal made at the close of the Government's evidence and renewed at the close of all the evidence.

Interstate transportation of a female for immoral purposes is the gist or gravamen of the offense. Mortensen v. United States, 322 U.S. 369, 64 S.Ct. 1037, 88 L.Ed. 1331; Neff v. United States, 8 Cir., 105 F.2d 688, 691. The meaning of the word "transport" is too clear to permit of debate. By usage, as well as by derivation, it means to carry across. See 42 Words and Phrases, Transport, p. 512 et seq.; Dixie Oil Co. v. United States, 5 Cir., 24 F.2d 804, 805.

There was ample evidence that the woman was a prostitute, and that the defendant knew that at various times she had engaged in that nefarious trade in Birmingham, Alabama, and in New Orleans and Shreveport, Louisiana. The sum and substance of the evidence as to transportation was that the defendant and the victim were together in a bar in Birmingham, Alabama, on November 15, 1950, the victim dressed for traveling and carrying a small overnight bag, and three days later, on November 18, they were seen together in Bossier City, Louisiana, and that the victim continued the practice of her trade there. The learned district judge made the best case possible for the Government in overruling the motion for acquittal.[1] We do not agree.

by several witnesses that they were contacting bell boys and they were making dates, and she was filling them, and he was going from one place to another, different hotels, and that he was seen in her presence on a number of occasions, and that he was in her room, or in her presence, when these bell boys were paid

The evidence must have been such as to justify the jury as reasonable men, in believing beyond a reasonable doubt that the defendant transported the woman or caused her to be transported from Birmingham, Alabama, to Bossier City, Louisiana. Even if, as the district judge said, the inference could fairly be drawn that he "came with her over here", that would not be sufficient to show that he transported her or caused her to be transported. The Government concedes in brief:

"It is true that the Government offered no direct evidence or proof that the defendant accompanied the victim or any direct proof as to the type of vehicle used in making the trip or that the defendant bought the victim a ticket or paid her transportation from Birmingham, Alabama to Bossier City, Louisiana, which said proof the Government was not required to offer according to the District Court, and with which view we are entirely in accord."

As before stated, we do not agree with that view. It seems to us contrary to the well settled rule that to sustain the conviction the inferences reasonably to be drawn from the evidence must not only be consistent with his guilt but inconsistent with every reasonable hypothesis of his innocence. Kassin v. United States, 5 Cir., 87 F.2d 183, 184; Rent v. United States, 5 Cir., 209 F.2d 893. The evidence in this case is entirely consistent with the woman being the sole, willing, and exclusive cause of her own transportation. Indeed, at another point

their tips and commissions for having made these dates for the woman to commit prostitution.

"The Government has further shown that they were together in this barbecue place over there drinking together, that she went off and changed her clothes and came back and met this man there, and that she had an overnight bag with her, indicating that she was going to travel somewhere, and a couple of days after that both of them show up over here in Bossier City, at which time and place she continued her activities as a prostitute.

"I think the Government has established that the man knew all about her activities as a prostitute, and that he came over here with her, regardless of the fact there is no evidence to show in what manner—at least no evidence in this record at this time—they got over here, but there is evidence in this record to show that he was seen in her room at these various hotels and other places by these bell boys, and that they were paid off for their services in procuring dates for her while he was in the room, and that on at least one occasion he did ask one of the bell boys over the telephone how business was, or how things were coming along, tending to show that he was cooperating with this woman in carrying on her prostitution.

"In New Orleans we find the woman engaged in the same kind of business in a house of prostitution, and, according to the FBI Agent, the man himself admitted that they were at that time living together in New Orleans at a certain street address, at the same time she was carrying on this prostituting activity, and that they left there together on the 13th of November and went to Birmingham, Alabama, where we find that she continued her activities as a prostitute at that place. In other words, according to his own admission, he knew she was engaged in prostitution in New Orleans and in Birmingham, and he knew that she was engaged in it over here after she came to Louisiana.

"I do not think it is necessary for the Government to prove by eye witnesses that they followed them every minute of the way from Birmingham to Shreveport, or to Bossier City, to establish transportation. They left Birmingham together, or at least left that barbecue stand and drinking place together, and a couple of days later they showed up at a tourist court over here where she started her prostituting activities again, and I think there is sufficient proof for any fair minded juror to conclude that he did transport her over here, or came with her over here, knowing that she was going to continue her activities as a prostitute over in Bossier City and Shreveport, and, I personally believe from the evidence up to now, that he not only knew that she was engaged in that activity, but that he participated in it to the extent that the law makes it a crime.

"I shall overrule the motion for acquittal.

"Bring the jury back."

in its brief the Government makes the following remarkable concession:

"It is true that there is not one scintilla of evidence to be found in the record tending to show that the defendant transported the victim with intent to induce her to engage in prostitution."

That in effect, we think, concedes that the Government failed to prove its charge upon this trial. The judgment is, therefore, reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.