Anthony PANCI, Appellant,

v.

UNITED STATES of America, Appellee.

No. 16892.

United States Court of Appeals Fifth Circuit.

June 3, 1958.

Thomas M. Brahney, Jr., Edw. J. Boyle, Clem H. Sehrt, New Orleans, La., for appellant.

Rene A. Pastorek, Asst. U. S. Atty., Jack C. Benjamin, Asst. U. S. Atty., New Orleans, La., M. Hepburn Many, U. S. Atty., New Orleans, La., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and CAMERON, Circuit Judges.

HUTCHESON, Chief Judge.

This appeal is from a conviction [1] and sentence imposed upon a verdict of guil-

1. The indictment brought against the appellant and one Giardina, who pleaded guilty and was not therefore tried, contained nine counts.

The first eight counts charged substantive violations of the narcotic laws in respect of three alleged quantities of heroin; the ninth was laid under the conspiracy section of the code.

Counts one, two, and five, respectively, charged the illegal obtaining, the illegal selling, and the illegal concealing on or about December 22, 1955, of 300 grains of heroin in violation of Secs. 4704(a) and 4705(a), Title 26 U.S.C.A. and Sec. 174, Title 21 U.S.C.A.

Counts three and four charged the illegal obtaining and the illegal selling on Dec. 24, 1955, of 31 grains of heroin.

Counts six, seven, and eight, charged illegal purchase, the illegal concealment and the illegal selling on Dec. 29, 1955, of 3 ounces 68 grains of heroin.

Count nine, the conspiracy count, charged that, beginning about Dec. 20, 1955, and continuing thereafter until the date of the indictment, Nov. 29, 1956, the defendant and Giardina with John Sansone, Lena Giardina and Carol Giardina, who were named but not indicted, conspired to unlawfuly acquire, conceal and transfer to the said John Sansone, an admitted addict and paid government informer, John Gjertsen and Michael Picini, also a government agent, and to one Lena Giardina, in violation of Sec. 371, Title 18 U.S.C.A., the narcotics referred to in the substantive counts.

Twenty-seven overt acts which covered a period from Dec. 20, 1955 to April 30, 1956, were alleged to have been committed in furtherance of the alleged conspiracy.

Upon completion of the Government's case in chief and at the end of the case, defendant moved for a judgment of acquittal. Both motions were denied.

The jury returned its verdict acquitting appellant on counts one through five and finding him guilty on charges 6 through 9, and the court denied defendant's motion for a new trial, but granted his motion for judgment of acquittal as to count seven.

Sentenced to imprisonment for a period of three years on each of counts six and eight, to run concurrently, and five years on count nine, the execution of the

ty, on two counts charging substantive violations of the narcotic laws, and one count charging a conspiracy to violate them. By it appellant seeks to test whether a conviction, which, as he claims, because of the admission of highly prejudicial hearsay testimony and the denial of the motion to acquit for want of evidence to convict but keeps the promise of due process to the ear while it breaks it to the hope, may stand.

Urging upon us: that extrajudicial inadmissible hearsay statements were erroneously admitted over his objection; that without them the record is devoid of evidence tending to establish his guilt, and the conviction was one of guilt by association, resting entirely on inadmissible hearsay, and supported by no substantial admissible evidence; the defendant thus earnestly concludes his brief:

"This case and the evidence adduced at the trial thereof demonstrates very vividly the abuses which arise when the Government uses a conspiracy count and the evidentiary abuses which are permitted thereunder to seek a conviction. It is cases such as this that has prompted the Supreme Court of the United States to criticize its use and various commentators to deplore the abusive use of the conspiracy charge.

"It is conceivable that a conviction could be or rather should be had in a case such as this where not one witness could be cross-examined as to the statements testified to, as involving the defendant, for each and every one of those statements were hearsay? Is it American justice to sentence a man to the penitentiary, to deprive him of his liberty when not one witness testified that they knew the defendant, that they ever spoke to the defendant, that they ever heard anyone speak to the defendant, or that they saw or, personally of their own knowledge, knew the defendant to have committed a

violation of the law? Counsel believes, as does every law abiding citizen, that the vicious narcotic traffic should be stamped out and that narcotic violators should be dealt with harshly but counsel does not concede,. that the sacred and fundamental' principles of a fair and impartial trial, which is guaranteed to every citizen, should be violated even in a narcotic case. Counsel sincerely believes that if this case had been anything but a case involving narcotics that a judgment of acquittal would have been granted and, if not, the jury would have returned a verdict of not guilty as to all counts."

Here, presenting under six numbered specifications, three grounds of error: (1) the denial of his motion for bill of particulars; (2) the admission over objection of prejudicial hearsay testimony; and (3) the refusal to direct a verdict of acquittal for want of evidence; appellant urges upon us that the judgment must be reversed with directions to acquit him.

Emphasizing that the government did not produce a single witness who could or would testify: that he had spoken to defendant or heard him speak to anyone; that he had purchased, or seen anyone purchase, heroin from him; that he saw him transfer heroin to anyone or have any heroin in his possession; that he saw the defendant in possession of marked and identified money used to purchase heroin or saw him sell or deliver heroin to anyone; appellant insists that it was error to deny his motion for acquittal. In further support of his claim, he points to the undisputed, indeed the admitted fact that the only testimony relied on at the trial as tending to implicate defendant in the crimes charged was the hearsay statements, admitted over defendant's repeated objections, of the co-defendant Giardina who pleaded guilty and of Lena and Carol Giardina, who were named but not indicted as co-con-

sentence imposed on count nine suspended, and appellant placed on probation for a period of five years to commence after

the completion of the sentence on counts six and eight, he appealed.

spirators, none of whom testified at the trial and therefore could not be cross-examined.

■■ We agree with the appellant that, under the rule established and prevailing in this court, it was error to overrule his objections to the hearsay testimony of the Giardinas, and that it was error on this record not to direct a verdict in his favor. In Montford v. United States, 5 Cir., 200 F.2d 759, 760, this court thus correctly laid down the rule governing the trial of cases where, as here, it was sought to *prove a defendant's connection with a conspiracy or his complicity in a crime by the hearsay statements and declarations of persons named or charged as co-conspirators or accomplices, but not otherwise proven to be such:*

"The declarations of one conspirator made in furtherance of the objects of the conspiracy, and during its existence, are admissible against all members of the conspiracy. Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429. But a defendant's connection with a conspiracy cannot be established by the extra-judicial declarations of a co-conspirator, made out of the presence of the defendant. There must be proof aliunde of the existence of the conspiracy, and of the defendant's connection with it, before such statement becomes admissible as against a defendant not present when they were made. Glasser v. United States, 315 U.S. 60, 74, 62 S.Ct. 457, 86 L.Ed. 680, 701; Minner v. United States, 10 Cir., 57 F.2d 506; May v. United States, 84 U.S. App.D.C. 233, 175 F.2d 994; United States v. Nardone, 2 Cir., 106 F.2d 41, reversed on other grounds 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307."

Under that rule we think it clear beyond question that the admission of the hearsay testimony fatally impregnated the case with prejudicial and reversible error. In addition, with this evidence excluded and eliminated from the record, the case was completely circumstantial and there was no evidence pointing, with the degree of clarity required for conviction in such cases, to appellant's guilt. It was error, therefore, not to direct an acquittal and because of this error the judgment must be reversed with directions to acquit.

The United States, in an attempt to demonstrate that the evidence was sufficient to convict appellant, undertakes, as it declares, "to set out without including therein any of the hearsay matters, a statement of the evidence in the case". A reading of this statement, as its brief sets it out, will, we think, demonstrate that it has not done, it cannot do, this. Leaving the hearsay testimony out of consideration destroys the case in fact. Taking it into consideration destroys it in law. To see that this is so, it is only necessary to look at the case as the government sets it out on page 13 of its brief. There it is stated:

"It was established, and appellant made no issue that the goods received by Gjertsen, Sansone and Picini was heroin and appellant had no authority to transfer the narcotics. The issue presented to the Court below and the jury was principally that of appellant's criminal connection with the transfer of heroin and the conspiracy for that purpose.

"It should be noted that in the summary of the evidence just presented all of the hearsay statements complained of by appellant have not been mentioned."

Unfortunately for the government's case, this is not, it cannot on this record be, so. It is true, as the government points out on page 10 of its brief: that there was testimony that an agent saw Giardina go into a place where he spoke to Panci; that he saw Panci and Giardina leave the store; that he saw them sit on stools next to each other at the Toddle House cafe; that while they were sitting there drinking coffee, the defendant withdrew his left hand from his pocket and passed a small brown paper bag behind his back to Giardina; and that they thereafter left the Toddle

House and returned to the barbecue stand. It is true, too, that there was testimony: that Picini gave Giardina $1,050 for the purchase of three ounces of heroin; and that sometime afterward Giardina went into his own house and took one ounce of heroin from the total of three in a brown paper bag. The record does not support the government's contention that the brown paper bag from which the heroin was taken was identified by anyone as the one given Giardina by defendant. If it did, this would not be important. *What is important here is that no one testified that the brown paper bag given* Giardina by defendant had narcotics in it when it was given to him. In short, the testimony of the government agent that Giardina was seen with Panci and that Panci passed a paper bag to him was wholly insufficient to establish his guilt. While, therefore, the testimony of the government witness well served its purpose of smearing Panci because he was seen associating with Giardina, no evidence whatever was offered to support its claim that Giardina or anyone else obtained heroin from Panci.

Giving the evidence its fullest force, it amounts to no more than that Panci was seen associating with characters of low repute, and, if this conviction is allowed to stand, the result would be to convict him on suspicion. There is a proverb that a man is known by the company he keeps, and another one, "Give a dog a bad name and kill him", but these are not legal principles which will serve to convert inadmissible hearsay into admissible testimony or support a conviction on testimony merely that a defendant is seen in bad company. Kassin v. United States, 5 Cir., 87 F.2d 183. In that case and in other circumstantial evidence cases this court has without wavering declared that the test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt, and equally without wavering has applied it. Cf. Vick v. United States, 5 Cir., 216 F.

2d 228, and Lloyd v. United States, 5 Cir., 226 F.2d 9, at page 13.

The government might have made out a case if, in the ordinary way so often successfully used in informer type cases, the agents had given the informer marked or otherwise identified money, had searched him carefully before he left on his mission to insure that he had no narcotics concealed on or about him, had kept him in sight at all times so as to exclude his having obtained the narcotics elsewhere, and then made the arrest to find the identified money in the possession of the defendant and the narcotics in that of the informer. Nothing of that kind was done here. Instead the government brought and testified to its case with no more real support in the evidence for a finding of guilt than there was for the finding that a ghost had been seen in the story of the man who said, "My friend saw a ghost eating off a plate at his house last night, and if you don't believe it, here is the plate he says he saw the ghost eating from".

For the failure of the court to grant defendant's motion to direct a verdict, the judgment is reversed with directions to acquit him.