James M. **CUTHBERT** and Warren F. Busby, Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 18025.

United States Court of Appeals
Fifth Circuit.

May 10, 1960.

Patrick C. O'Donoghue, Washington, D. C., John E. Fitzgibbon, William C.

Wright, Laredo, Tex., Donald J. Capuano, Washington, D. C., for appellants.

Brian S. Odem, Asst. U. S. Atty., Brownsville, Tex., William B. Butler, U. S. Atty., Houston, Tex., for appellee.

Before RIVES, Chief Judge, and HUTCHESON and BROWN, Circuit Judges

HUTCHESON, Circuit Judge.

Defendants-appellants were charged with one Birch in a four count indictment. Count One charged conspiracy to violate the marihuana laws of the United States, specifically 21 U.S.C. § 176a; 26 U.S.C. § 4744(a) (2) and 26 U.S.C. § 4742(a). The three other counts charged substantive offenses in violation of those laws.

Birch pleaded guilty, and the appellants, tried by the court on jury waiver, were found guilty on each count and sentenced on each to serve ten years in the penitentiary, the sentences to run concurrently.

Appealing from the conviction and sentence, the appellants are here urging upon us that under the authoritative holdings of this court governing review of a criminal case tried below before the court without a jury the evidence was insufficient, as matter of law, to justify the trial judge's conclusion that defendants' guilt was established beyond a reasonable doubt.

No useful purpose will be served by setting out the evidence in detail. This is its substance, as testified to substantially without dispute. Appellant Busby, in the company of the defendants, Cuthbert and Birch, left Washington, D. C. on or about August 4, 1959, for a combined vacation and employment seeking trip to Texas. Busby supplied the car, and Cuthbert and Birch pooled for expenses approximately $125.00 each. Busby and Cuthbert were professional musicians and Birch was a music student of Cuthbert. Busby had previously worked in the southwest area as a musician with the El Paso Symphony, and was desirous of obtaining employment and settling in the Laredo, Texas area because he liked it and because the climate was favorable to his asthmatic condition. Birch, a confessed narcotic addict, went along on the trip with the intention, not disclosed to the others, of trying to obtain marihuana in Mexico and bring it back to Washington.

They arrived in Laredo on Friday, August 7, 1959, registered at the El Cortez Motel, and slept most of the day. Between August 7, and August 9, 1959, the three defendants went across the border to Nuevo Laredo on various occasions, sometimes together, sometimes in pairs, and sometimes alone, to eat Mexican food and partake of the social life there. They did not have much money so they tried to eat many of their meals in Mexico where the food was cheaper.

Busby and Cuthbert, though required to register as prior narcotic violators, on their trips across the bridge, through ignorance at first failed to do so, but, informed of the requirement, they both registered. Defendants were then placed under surveillance, and government agents took a motel room across from the room in which the defendants were staying.

Birch testified that on the evening of August 9th, he had the first opportunity to make a marihuana connection, but, since he was with the other two most of the time and he knew they would not have any part of his plan, he did not make the connection until after Busby had gone back to the hotel, and Busby knew nothing about it. He paid part of the price as a down payment and was to get delivery in Laredo the following morning when he was to pay the balance. The following morning, Birch, having previously obtained permission from the other defendants to allow him to withdraw enough money from the pooled funds to fly home because of illness in his family, left the motel to get an airplane ticket to Washington.

On the morning of August 10th, Busby and Cuthbert did various errands and drove around looking at the sights be-

fore returning to the motel, so they could check out by noon to move into a cheaper hotel, since their funds were low after loaning Birch plane fare.

In the meantime, Birch had returned to the motel and kept going outside and looking up and down the street. Finally he went outside and met a red pickup truck, handed the driver the remaining payment on, and received, the five pounds of marihuana which is the basis of the conviction in this case. He then returned to the motel, called a cab and went to the airport, where he was arrested and the five pounds of marihuana recovered from his baggage. The other two defendants were not at the motel when Birch received the marihuana. There is no proof that any of the defendants ever saw or took possession of any of the marihuana while they were in, or after they returned from, Mexico. When Busby and Cuthbert returned to the motel to check out, they were arrested. They were searched and in the suitcase in which Cuthbert was carrying his soiled laundry, the agents found some marihuana sweepings in two shirts owned by Cuthbert. There is no evidence that Busby ever wore these two shirts.

The three defendants were taken into custody and questioned separately. They all told substantially the same story about their trip to Laredo from Washington. During questioning by the government agent, Busby and Cuthbert denied having any knowledge of Birch's marihuana transaction, and Birch confirmed these denials, specifically taking the full guilt upon himself. At the trial each of the defendants testified and each told substantially the same story that he told Agent Rody, who testified for the government.

Busby and Cuthbert maintained their innocence from the time of their arrest and through all the proceedings. Birch readily admitted his guilt, when arrested, during the trial, and even after he was sentenced to ten years imprisonment by the trial court, and it was made clear by implication if he wanted to change

his story the judge would consider reducing his sentence.

At the close of the government's case, the district judge said to the government's counsel: "There are a number of suspicious circumstances here, and I think they are probably guilty, but I don't believe beyond a reasonable doubt you have established it."

At the conclusion of the case there ensued an extended personal discussion by the judge of the case, in the course of which it clearly appeared that he was greatly torn between doubt and apprehension, doubt that the government had sustained the burden of proof and apprehension that the defendants might be imposing upon him. Stating: "I said at the conclusion of the government's testimony, without understanding all of the evidence that was in, that I did not think the evidence was sufficient, until I was apprised as to two details * * *." he went on to say: "After having some of the evidence straightened out in my mind, I felt that it was sufficient circumstantially to show the conspiracy and the substantive offenses."

In rationalizing his way to this conclusion, the judge said: "The pattern seems to be that since two of them had records—one of them had just concluded his parole in June, the other had completed his probation some time ago—here is one who had no record and they all three came down here together." Going on to analyze the evidence, none of which in any direct way connected Cuthbert and Busby with the transaction, he concluded: "Now I am going to give any defendant the benefit of any reasonable doubt that there is in any trial, but I am not going to go for stories as inconsistent as these are. Some people are a little too smooth."

Then turning his attention to the defendant Birch, who had without wavering taken the full blame for the narcotics and exonerated the other defendants, he said: "Now this little punk, it seems that about his only virtue is that he was trying to save two other men. By his

own admission he was going to get in the business—I think he has already been in it—so I have no doubt in my mind about the guilt of these defendants."

██ We think that in thus struggling with his doubts and fears and thus rationalizing them away, without distinguishing between his role as Judge of the law and his role as trier of the facts, the district judge failed to keep in mind that, in a circumstantial case like this, in order for the evidence to make out a case for his determination as trier of the facts, it was not sufficient for him to conclude merely that the circumstances relied on were consistent with a reasonable finding of guilt. He must also conclude that they were not, as matter of law, inconsistent with such a finding. We think, too, that, as the result of this failure and of his expressed feeling that he did not want to be imposed upon, he temporarily lost sight of his difficult but inescapable double obligation as judge of both the law and the facts where the defendants' liberties were concerned, and thus permitted himself as a finder of facts to accept possibilities as probabilities and to decide as an issue of fact what he should have first decided as an issue of law, whether there was sufficient evidence to support a fact finding. In short, in struggling as a trier of the facts, with the dilemma presented by the clash of his doubts and fears, he lost sight of his primary position as a judge of the law which required him to first decide whether the circumstances relied on were in law of sufficient probative force to support a fact finding of guilt. In so struggling, he sought escape from the confusion caused by this unresolved conflict in a strongly worded affirmation that he was free from doubt, an affirmation by which certitude was made to seem certainty, an impermissible course, we think, in the trial of a criminal case and the resolution of doubts raised therein. In our opinion, instead of trying the case

as a trier of facts, and, as such rationalizing himself into discarding the doubts he felt as a judge of the law, and finding defendants guilty as matter of fact, he should as matter of law have taken counsel of his doubts and acquitted them.

Because this court has so often and so incisively and concisely stated its role in appeals from judgments in criminal cases where the evidence is circumstantial, we will not here undertake to restate that role, but will content ourselves with citing the cases [1] and quoting briefly from some of them.

In Vick v. United States, 216 F.2d 228, this court said:

"In circumstantial evidence cases, this Court has said repeatedly that to sustain conviction the inferences reasonably to be drawn from the evidence must not only be consistent with guilt of the accused but inconsistent with every reasonable hypothesis of his innocence. Kassin v. United States, 5 Cir., 87 F.2d 183, 184; Rent v. United States, 5 Cir., 209 F.2d 893, 899; McTyre v. United States, 5 Cir., 213 F.2d 65, 67. In such cases the test to be applied on motion for judgment of acquittal and on review of the denial of such motion is not simply whether in the opinion of the trial judge or of the appellate court the evidence fails to exclude every reasonable hypothesis, but that of guilt, but rather whether the jury might reasonably so conclude. Curley v. United States, 81 U.S.App.D.C., 389, 160 F.2d 229, 232, 233; Cf. Yoffe v. United States, 1 Cir., 153 F.2d 570, 572; Remmer v. United States, 9 Cir., 205 F.2d 277, 287. 'The weight of circumstantial evidence is a question for the jury to determine; such evidence alone or in connection with other evidence may justify a conviction. Great care, however, must be exercised in

1. Kassin v. United States, 5 Cir., 87 F. 2d 183; Vick v. United States, 5 Cir., 216 F.2d 228–233; DeLuna v. United States, 5 Cir., 228 F.2d 114; Lloyd v.

United States, 5 Cir., 226 F.2d 9, at page 13; Rodriguez v. United States, 5 Cir., 232 F.2d 819; Panci v. United States, 5 Cir., 256 F.2d 308.

drawing inferences from circumstances proved in criminal cases, and mere suspicions will not warrant a conviction.' 20 Am.Jur., Evidence, Sec. 1217, p. 1070. As said by Judge Prettyman in Curley v. United States, supra, 'The task of the judge in such case is not easy, for the rule of reason is frequently difficult to apply, but we know of no way to avoid that difficulty.' Was then the jury warranted in deducing from the evidence inferences which excluded every reasonable hypothesis but that of guilt?"

In Panci v. United States, 5 Cir., 256 F.2d 308, at page 312, stating that upon the evidence in the case the result would be to convict on suspicion, the court, citing Kassin v. United States, 5 Cir., 87 F.2d 183, said:

"In that case and other circumstantial evidence cases, this court has without wavering declared that the test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt, and equally without varying has applied it."

In Rodriguez v. United States, 5 Cir., 232 F.2d 819, 820, at page 821, in a case tried by the court without a jury, this court reversed the conviction of the defendant, stating:

"The authorities are clear that circumstantial evidence may, of course, * * * convict. Nevertheless, because of the fact that it is circumstantial and that a grave wrong may be done to an innocent man by reasoning from circumstances not sufficiently cogent in themselves or as connected, and particularly not sufficiently exclusive of every innocent hypothesis, the courts have been very sedulous to prevent an innocent man being found guilty where the evidence does not conform to the acceptable standards."

Nothing said in Holland v. United States, 348 U.S. 121, at page 140, 75 S. Ct. 127, 137, 99 L.Ed. 150, or in the authorities there cited, is at all inconsistent with what has just been said by us. What and all that was in question in Holland's case was whether the court had erred in refusing to instruct "that where the government's evidence is circumstantial it must be such as to exclude every reasonable hypothesis other than that of guilt." There the court said:

*"There is some support for this type of instruction in the lower court decisions * * * but the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect."* (Emphasis supplied.)

It is true that in one or two cases, including one from this court, McFarland v. United States, 273 F.2d 417, 419, courts have arguendo and as dicta undertaken to give the Holland opinion an entirely different and more far reaching effect. In McFarland's case, for instance, the court stated:

"It is not necessary that the evidence be wholly inconsistent with every conclusion except that of guilt, provided the evidence is substantial enough to establish a case from which the jury may infer guilt beyond a reasonable doubt."

We can certainly agree that whether the evidence by which guilt is sought to be established is circumstantial or direct, *if it is substantial enough to establish a case from which the jury may infer guilt beyond a reasonable doubt, it is sufficient to take the case to the jury.* We cannot and do not agree, however, that in arriving at a decision that, as matter of law, evidence is sufficient to take the case to the jury, it is not necessary that the evidence can reasonably be found to be consistent with the conclusion of guilt and wholly inconsistent with every other reasonable conclusion. On the contrary, we are of the clear opinion that in a case where the evidence relied on to establish guilt

is entirely circumstantial, it is essential to a just decision by the district judge that the evidence makes out a fact case for the decision of the jury, that the court conclude, that the jury might reasonably find not only that the evidence is consistent with a finding of guilt but that it is not consistent with any other reasonable conclusion. If this is not so, a verdict of guilty beyond a reasonable doubt, based wholly on circumstantial evidence, though it keeps the promise of a fair trial to the ear, breaks it to the hope.

The judgment is Reversed with directions to enter judgments of acquittal unless, within a reasonable time, new and different evidence is obtained.