**Elmer M. HARRIS, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

No. 18239.

United States Court of Appeals
Fifth Circuit.

Dec. 27, 1960.

Rehearing Denied Feb. 27, 1961.

J. Edward Worton, Worton & Cline, by O. B. Cline, Jr., Miami, Fla., for appellant-defendant, Elmer M. Harris.

David C. Clark, E. Coleman Madsen, U. S. Atty., Lavinia L. Redd, Stanley A. Brons, Asst. U. S. Attys., Miami, Fla., for appellee.

Before TUTTLE, Chief Judge, and RIVES and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

Each count of a thirteen-count indictment charged the defendant with wilfully causing to be transported in interstate commerce, from Miami, Florida, to Chicago, Illinois, a check in the amount of $200.00, signed "Arthur Markle," drawn on the Southmoor Trust and Savings Bank, Chicago, Illinois, knowing same to have been falsely made and forged, in violation of Title 18, United States Code, Sections 2 and 2314. The jury returned a verdict of guilty on each count. The court imposed three-year, concurrent sentences on the first three counts, and as to the remaining ten counts suspended sentence, and placed the defendant on probation for five years to commence upon his release from confinement.

The defendant had been a wealthy man, president of a corporation which had become bankrupt. He and his wife and their four adopted children lived in a large house in Miami, Florida. Before moving to Miami from Chicago, they had been close friends of Arthur Markle and that friendship extended over more than twenty years. In September 1958, Markle's son left school, and later became stranded in Miami. Upon invitation of the Harrises he took residence in their home. In November Markle came to Miami to see his son, and visited the Harris home every day until his return to Chicago on November 26. During his visit, he loaned the defendant $300.00 in cash and two $150.00 checks drawn on the Southmoor Trust and Savings Bank of Chicago. Within a month, that is on December 26, Markle was called from the Bank and told that his account was overdrawn. He went almost immediately to the Bank and there examined the series of $200.00 checks and found that they were not signed by him. Seven of the checks were payable to and endorsed by the defendant. From the banker's office, Markle telephoned to the defendant, who admitted having drawn the checks and promised to make restitution. This

he ultimately did, but not before the checks had been made good by the Bank and its insurer.

Markle testified that he had not authorized the drawing of the checks. A handwriting expert gave his opinion that there had been a conscious effort to imitate the authentic signature of Arthur Markle. Two of the checks had been deposited to the defendant's account at the Florida National Bank & Trust Company of Miami. That Bank had cashed five of the checks for the defendant in person. Several of the other checks had been openly delivered by the defendant to the respective payees. The defendant testified in his own behalf that, in addition to the loans totaling $600.00, Markle had told him that he usually had from $2,500.00 to $4,000.00 in the bank, and "he said that if I needed it, I could have it, or if I needed more money to call him up." The defendant further testified that he was unable to reach Markle by phone and simply drew the checks. On cross-examination the defendant was asked whether he had drawn other checks and signed Markle's name to them. He replied, "None that I can recollect." Over the objection of his counsel, the defendant was then questioned about Government Exhibits 23A through 23H, inclusive, which were photostatic copies of eight other checks in the aggregate amount of $1,500.00, each purporting to be signed by Arthur Markle and payable to and endorsed by the defendant. The defendant's replies were somewhat evasive, for example:

"These are not very clear copies, your Honor. The printing I can recognize as being mine. The signature looks like it's mine. But these are not very clear copies. However, if they were written, they certainly were paid if I owed them, because I have paid most everybody in the whole country that I owed anything."

The appellant insists that the court erred in denying the defendant's motion for judgment of acquittal made at the conclusion of the Government's evidence. There was then ample evidence to submit the case to the jury, including Markle's testimony that the checks were not signed or authorized by him and that the defendant had admitted over the telephone drawing the checks, the testimony of the handwriting expert as to comparisons with known specimens of the defendant's writing, and the testimony of the banker and of several others to whom the defendant had delivered the checks. Since the checks were put into circulation in Miami and drawn on a Chicago bank, there was sufficient evidence that the defendant *caused* them to be transported in interstate commerce. In any event, when the defendant introduced evidence in his own behalf, he abandoned his motion for judgment of acquittal made at the close of the Government's evidence.[1] The motion was renewed at the close of all the evidence and again denied.

It is true that the defendant made little or no effort to conceal his actions, and, if they believed his testimony, the jurors would have been warranted in finding that he acted in good faith upon the assumption of implied authority from Markle, an absence of fraudulent intent. On the other hand, the jurors were warranted in not believing the defendant. They could reasonably have believed that the defendant thought simply that his long time friend would come to his rescue and protect him from his criminal misconduct. Fraudulent intent *vel non* and all other factual issues in the case were matters for the determination of the jury.[2]

The appellant raises other questions as to the allowance in evidence of other

1. T'Kach v. United States, 5 Cir., 1957, 242 F.2d 937; Jackson v. United States, 5 Cir., 1958, 250 F.2d 897; Meeks v. United States, 5 Cir., 1958, 259 F.2d 328.

2. We refer to the provisions of Rule 35, Federal Rules of Criminal Procedure, 18 U.S.C., solely to invite the exercise by the visiting judge of his untrammeled discretion.

checks signed by the defendant for comparison purposes, permitting the defendant to be cross-examined as to Government's Exhibits 23A through 23H, and claimed excessive interrogation of the witnesses by the district judge. We have carefully considered each of these contentions but find them so obviously without merit as not to warrant discussion.

The judgment is

Affirmed.