Robert F. O'NEAL, Appellant,

v.

UNITED STATES of America, Appellee.

No. 26081.

United States Court of Appeals Fifth Circuit.

March 19, 1969.

On Rehearing and Rehearing En Banc Denied May 6, 1969.

**132**

T. Malone Sharpe, Sharpe, Sharpe, Hartley & Newton, Lyons, Ga., for appellant.

Floyd Buford, U. S. Atty., Walker P. Johnson, Jr., Asst. U. S. Atty., Macon, Ga., for appellee.

Before BROWN, Chief Judge, AINSWORTH, Circuit Judge, and FULTON, District Judge.

FULTON, District Judge:

Appellant stands convicted upon each count of a four-count indictment which charged him with violation of Internal Revenue laws relating to non-tax paid distilled spirits. We affirm the conviction on each count.

In Count 1 appellant was charged with possession and custody of and control over an unregistered moonshine still, in violation of 26 U.S.C. §§ 5179(a) and 5601(a); in Count 2 with carrying on the business of a distiller without having given bond, in violation of 26 U.S.C. §§ 5173 and 5601(a); in Count 3 with engaging in and carrying on the business of a distiller with intent to defraud the United States of the tax on spirits distilled by him, in violation of 26 U.S. C. § 5602; in Count 4 with working in a distillery for the production of spirits upon which no sign was placed and kept, in violation of 26 U.S.C. §§ 5180 and 5601(a).

Jointly indicted with appellant were two others, Padgett and Cooper. However, they were tried and convicted upon the same offenses several months before the trial and conviction of appellant. Neither of them testified in the trial of appellant.

Appellant claims multiple errors as grounds for reversal, among which he specifically challenges:

1. The validity of his arrest and the seizure and search of his automobile.

2. The failure of the arresting officers to more promptly take him before a United States Commissioner.

3. Portions of the jury charge as given and the failure of the Court to charge on other matters.

4. The denial of appellant's pretrial motion seeking the Government's

witness list and the denial of his motion for judgment of acquittal.

5. The denial of appellant's motion to appeal in forma pauperis.

## THE SEQUENCE OF EVENTS

There is ample evidence in this record whereby the jury could have found the following facts. A mere inspection of this evidence does much to resolve the issues upon this appeal.

By pre-arrangement, two state revenue officers were to meet a federal revenue agent in a sparsely populated and heavily wooded area of Wilcox County, Georgia, where they proposed to discuss and investigate illicit liquor operations in that area. Apparently, this investigation did not have as its target any particular still or person.

The state officers arrived in the area about ten o'clock on the morning in question, slightly ahead of the federal agent. Their attention was drawn to a suspicious path which led into the woods, which they followed until they came upon a house and some barns, all abandoned. An unattended 1960 Chevrolet automobile, bearing a license plate of an adjacent county, was partially secreted in a plum tree thicket within 75 yards of the house. As the state officers investigated the premises, a man was seen near the house. He was ordered to halt but fled into the woods yelling "revenue officers." While in hot pursuit, and at a location near the house and automobile, the state officers came upon four 1500-gallon moonshine stills, one of which was then in operation. As one of the state officers approached the stills, two or three men were seen fleeing the scene.

The officers immediately radioed a nearby prison for help. Within a few minutes a deputy warden and some prison trusties, armed with pistols and accompanied by bloodhounds, arrived at the stills and began to track the men who had fled into the woods. Soon thereafter the federal agent arrived and was briefed by the state officers, after which he left the site of the stills in his automobile to patrol the dirt roads in the vicinity. About noon or shortly thereafter, at a distance of a mile or two from the stills, the prison personnel came upon Padgett, Cooper and the appellant, all of whom refused to surrender when ordered to do so. They were chased and finally apprehended, after several warning shots had been fired. Within a few minutes after their capture, the three men were delivered by the prison personnel to the federal agent who was waiting in his automobile on a road nearby. During the pursuit there was radio communication between the state officers who remained in the vicinity of the stills, the prison personnel who were in pursuit and the federal agent who was patrolling in his automobile.

Immediately upon taking the three men into custody, the federal agent returned them to the stills. Before any of the three men made any statement, they were twice fully advised of their constitutional rights, as delineated by Miranda, once by a state officer and once by the federal agent. The prisoners indicated that they understood what was then said to them in that regard. Thereupon, their handcuffs were removed and they were permitted freedom to move around in a limited area. Soon thereafter, Padgett, who was wearing only a skivvy shirt, asked one of the officers, "Can I go get my shirt?" When the officer asked for the location of the shirt, Padgett pointed to a shirt hanging in a tree, some thirty feet from one of the stills. With the permission of the officers, Padgett walked to the tree, secured his shirt and put it on. Nearby, laying upon gas cylinders which were used in the operation of the stills, were a sports coat and an Army field jacket. After putting on his shirt, Padgett asked Cooper, "Do you want me to bring your coat back with me?" Cooper's reply was, "No, leave it laying there." Padgett then turned to appellant and inquired, "Do you want me to bring your jacket?" Appellant replied, "Yes,

bring it." As Padgett was taking the jacket to appellant, the latter said, "Look in my pocket and get my cigarettes out of it." Padgett inspected the pockets and found no cigarettes and so advised appellant, whereupon appellant said, "Okay, just throw it down." Padgett was identified as the man who was observed by a state officer that morning near the house. Neither appellant nor Cooper were identified as having been seen at the still site by any of the officers.

Soon after the jacket incident, the federal agent inquired of the three men about ownership of the Chevrolet. No one answered. The federal officer testified that he then seized and searched the automobile; and that the search produced two pipe fittings, a pair of pliers and some grain sweepings, all of which were shown to be connected with the still operations. In response to a further question from the federal agent as to the ownership of the Chevrolet, appellant finally stated that it belonged to him and that he had owned it for about a year.

In the early afternoon, the federal agent and one of the state officers travelled to the town of Fitzgerald, about ten miles from the site of the stills. This trip took about 45 minutes. From the time of their return to the stills until after six o'clock that evening the federal agent and the state officers were engaged in their investigation, which included making an inventory of all articles, lifting fingerprints, checking all trails running to and from the area, and finally destroying the entire distillery. The federal agent and the prisoners then left the site of the stills and proceeded to a drive-in restaurant in Fitzgerald, where they ate. Afterwards they drove to Americus, which is about 70 miles from the site of the stills, perhaps 80 miles by way of Fitzgerald. Upon arriving at Americus, the three prisoners were photographed, fingerprinted and otherwise "booked in", after which they were placed in the jail, about ten o'clock at night.

The United States Commissioner who was nearest to the distillery was the Commissioner at Americus. At ten o'clock the next morning, the appellant and other prisoners were taken before that Commissioner. During appellant's trial, when defense counsel complained about the delay in taking appellant before the Commissioner, the District Judge judicially noted that at the time of appellant's incarceration at Americus the United States Commissioner there had recently undergone surgery and was in frail health.

Although appellant told the officers at the still site that he had owned the Chevrolet for about a year, when he took the witness stand at his trial he testified that he bought the Chevrolet the day before his arrest in the nearby town of Soperton from a Mr. Whittaker, who did not testify. Appellant testified that Cooper went with him to Soperton to take delivery of the Chevrolet; that on the morning after he purchased the Chevrolet, he lent it to Cooper and Padgett so that they could use it for a trip to Abbeville, but upon the condition that they would drop him off at a pond so that he could fish while they were in Abbeville; that within several hours after he was left at the pond, Padgett and Cooper emerged on foot from the nearby woods, wet and muddy; and that one of them said to him, "We went to a whiskey still and revenues (sic) have run us off and your car is still over there in the woods"; that as they stood there talking the dogs and trusties came out of the woods toward the pond, with the trusties discharging their firearms; that through fright he joined Padgett and Cooper in their flight from their pursuers; that after a chase and the firing of further shots Padgett, Cooper and appellant surrendered. Appellant did not disclose his alibi to his captors, nor to any of the officers. In fact there is no record of his having claimed the alibi until he did so on the witness stand.

## 1. VALIDITY OF ARREST, SEARCH AND SEIZURE

Appellant contends that he was unlawfully arrested by the prison trusties. The record shows that the appellant and others were detained by the trusties only a few minutes, until the deputy warden in charge of the trusties arrived and transported them to a nearby road, where federal agent Barrett was waiting, and by whom they were immediately arrested.

 If it is considered that Appellant was arrested by the prison trusties, the validity of the arrest depends on the law of citizens' arrest. In the absence of specific federal statutory authority, the validity of an arrest made by a private citizen depends on the applicable state law. United States v. Di Ri, 1948, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210; Alexander v. United States, 5 Cir., 1968, 390 F.2d 101. The following Georgia statute is applicable:

A private person may arrest an offender, if the offense is committed in his presence or within his immediate knowledge; and if the offense is a felony, and the offender is escaping, or attempting to escape, a private person may arrest him upon reasonable and probable grounds of suspicion. GA. CODE ANN. Title 27, § 27–211 (1953).

A still was being operated within the immediate knowledge of these trusties. The manner of its operation constituted several offenses of felony degree. The trusties knew that the offenders had fled the stills and were attempting to escape. Having been led to them through the woods by bloodhounds, the trusties certainly had reasonable and probable grounds to believe that they were guilty of felony offenses.

Even if the initial arrest by prison trusties was defective, which we find it was not, within a few minutes thereafter appellant was validly arrested by federal agent Barrett, a Special Investigator, United States Treasury Department, Alcohol and Tobacco Tax Division. Agent Barrett and the state officers discovered this moonshine operation quite unexpectedly. They had no warrant, but such an occurrence is provided for by statutory authority for an Internal Revenue Agent to:

(3) * * * make arrests without warrant for any offense against the United States committed in his presence, or for any felony cognizable under the laws of the United States if he has reasonable grounds to believe that the person to be arrested has committed, or is committing, such felony. 26 U.S.C. § 7608(a) (3).

Agent Barrett certainly had reasonable grounds to believe that appellant had committed a felony against the United States. He had observed one of the stills in operation. Stated differently, a crime was actually being committed in the presence of the officers. Two or three men had been seen running from the stills, and the trusties had been led by bloodhounds to three men, including the appellant, at a place in the woods a mile or two distant from the stills. The three of them fled when they were approached by the trusties and were apprehended only after warning shots were fired. There can be no question about the validity of this arrest by Agent Barrett.

 Appellant argues that the District Judge should have suppressed certain evidence which was found in his automobile, including the sweepings of wheat bran and wheat starch, pipe fittings and pliers. All of these items were shown by the evidence to be connected with the operation of the stills. It is elementary law that a reasonable search may be made in connection with a valid arrest. Permissive seizure of items during a search is no longer limited to fruits and instrumentalities of a crime, but extends to all articles of evidential value which the officers have probable cause to believe will aid in the apprehension or conviction of the indi-

vidual whose criminal behavior justified the search. Warden, Md. Penitentiary v. Hayden, 1967, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782. Before appellant acknowledged ownership of the automobile, he was twice advised of his constitutional rights. Under the facts and circumstances of this case, it would have been totally unreasonable not to search appellant's automobile.

## 2. THE DELAY IN PRESENTING APPELLANT BEFORE A COMMITTING MAGISTRATE AND HIS EXTRAJUDICIAL ADMISSIONS

Appellant argues that he was detained too long before being taken before a committing magistrate. He claims that he would not have made the incriminating statements if he had been promptly taken before such an officer, as required by Fed.R.Crim.P. 5(a). Thus, he contends that his statements were inadmissible under Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L. Ed.2d 1479, and its antecedent, McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819. In Mallory, a suspect of limited intelligence was arrested about two o'clock in the afternoon and detained under intensive questioning by police until he confessed six hours later. He was then further interrogated until he dictated a confession shortly after midnight. He was not taken before a United States Commissioner until the following morning. The confession was held inadmissible as having been elicited while the defendant was being held in violation of Rule 5(a) of the Federal Rules of Criminal Procedure.

■ Appellant was arrested about noon and was not taken before the United States Commissioner until the next morning. However, he was arrested in an isolated area, some seventy miles from the nearest Commissioner. The arresting officers were charged with the duty of investigating the area, inventorying the equipment, and destroying the distillery. Title 26, U.S.C. §§ 5615(1), 5681(c). These acts must be done immediately. If the officers leave and return later, evidence may be removed or destroyed in their absence. These activities require care and expertise, and consume considerable time, especially in a mammoth moonshine operation such as the one involved in this case. By the time the investigation and destruction of the still were completed and the suspects transported eighty miles, fed and "booked", it was ten o'clock at night. They were taken before the Commissioner the next morning. The District Judge judicially noticed that the United States Commissioner had recently undergone serious surgery on two occasions, and that his poor health probably entered into the decision of the agents to postpone the hearing until morning.

There was no intentional delay in taking appellant before a magistrate. In contrast to the Mallory situation, appellant was not subjected to intensive and exhausting interrogation with a view toward making him refute an earlier denial of guilt. Instead, his admission of ownership of the jacket came in response to an inquiry from Padgett and was not elicited in any way by the officers. His later admission of ownership of the automobile was shortly after his arrest, and after his constitutional rights had twice been fully stated. Mallory was decided before Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Mallory was intended to insure that a suspect not be held for long hours of interrogation during which he had only his own personal stamina with which to resist an overbearing police barrage, and that if he were so intimidated the evidence thus gleaned could not be used at trial. With Miranda, however, came the decree that all persons taken into custody must be immediately warned of certain constitutional rights. Appellant was given these warnings. He knew he was entitled to counsel and that he need not speak to the officers at all. Knowing this, he chose to speak. How, then, can Mallory

aid him? His detention before seeing the Commissioner, though delayed, caused him no harm.

### 3. JURY INSTRUCTIONS

Counsel for appellant made no oral or written request for any specific jury charge until after the Court had charged the jury and asked counsel to state their objections. At that juncture, counsel for appellant orally requested additional instructions, including a charge "on the law of impeachment" and a charge that "in order to convict a defendant on circumstantial evidence, every hypothesis save that of the guilt of the accused must be removed from the evidence."

█ As a basis for the request for a charge on the law of impeachment, counsel pointed out that during the trial of Padgett and Cooper one of the state officers testified that when he came upon the stills he saw two men fleeing therefrom; but that during the trial of appellant, two months later, the same officer testified that he saw three men fleeing the scene. An inspection of the jury charge which the able trial judge gave reveals that the jury was properly and extensively charged upon its role in judging witness credibility. Moreover, the record shows that upon cross examination of the officer in question, he acknowledged that there was this discrepancy in his testimony. The jury was fully aware that the veracity of this officer had been drawn in question and that his credibility was for them to decide, which they did.

█ In support of his request for an additional charge on the subject of circumstantial evidence, the appellant relies heavily upon Vick v. United States, 5 Cir.1954, 216 F.2d 228. This reliance is misplaced. *Vick* does not teach that in a circumstantial evidence case it is proper for the trial judge to charge the jury that the Government's evidence must be such as to exclude every reasonable hypothesis other than that of guilt. In this context, *Vick* merely states the standard by which a trial judge considers a motion for judgment of acquittal and the standard by which an appellate court reviews the denial of such motion.

In circumstantial evidence cases, this Court has said repeatedly that to sustain conviction the inferences reasonably to be drawn from the evidence must not only be consistent with guilt of the accused but inconsistent with every reasonable hypothesis of his innocence. (citations omitted) In such cases the test to be applied on motion for judgment of acquittal and on review of the denial of such motion is not simply whether in the opinion of the trial judge or of the appellate court the evidence fails to exclude every reasonable hypothesis, but that of guilt, but rather whether the jury might reasonably so conclude. Vick v. United States, *supra*, at p. 232.

Since *Vick*, this same rule has been clearly stated and applied by Judge Hutchinson in Cuthbert v. United States, 5 Cir.1960, 278 F.2d 220, and by Judge Goldberg, in Sykes v. United States, 5 Cir.1967, 373 F.2d 607, cert. den. 386 U.S. 977, 87 S.Ct. 1172, 18 L. Ed.2d 138. In the case before us, the trial judge properly charged the jury that the Government had the burden of proving the guilt of the defendant beyond a reasonable doubt. The words "reasonable doubt" were clearly and accurately explained. With respect to appellant's alibi that he was not a moonshiner but a fisherman, the able trial judge instructed the jurors that if there was a reasonable doubt as to whether defendant was present at the time and place of the alleged offenses, they should resolve such doubt in favor of the defendant and acquit him. In a circumstantial evidence case, such as this, where the jury has been properly instructed on the standard of reasonable doubt, as was done here, an additional charge that the evidence must exclude every reasonable hypothesis other than that of guilt is confusing and incorrect. Holland v. United States, 1954, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150.

In addition to the foregoing, appellant requested the trial judge to charge that the jury verdict must be unanimous and that "mere presence at a still creates no presumption of guilt or innocence." The first of these requests has been abandoned on appeal and the other does not merit any discussion.

▌ Finally, appellant contends that the portion of the charge which discussed his extra-judicial admissions of ownership of the jacket and the automobile was so inappropriate and incomplete as to constitute plain error; and that this Court should reverse even though this alleged error was not saved for our consideration by a specific exception at the trial. An inspection of that portion of the charge discloses that it fully and fairly stated the law on extra-judicial admissions. We find nothing in this or any other regard to warrant application of the plain error rule. Brown v. United States, 5 Cir.1967, 375 F.2d 769.

### 4. PRETRIAL WITNESS LIST AND MOTION FOR JUDGMENT OF ACQUITTAL

▌ Appellant moved for pretrial disclosure of all Government witnesses to be called at trial. The denial of this motion was properly within the discretion of the District Judge, and we find no abuse of that discretion. Downing v. United States, 5 Cir.1965, 348 F.2d 594.

▌ Upon denial of his motion for judgment of acquittal, appellant proceeded to present evidence in his defense, and concluded the case without renewing the motion. He thus abandoned the motion, making its denial inappropriate for review. Wilkins v. United States, 5 Cir.1967, 376 F.2d 552; Harris v. United States, 285 F.2d 85, cert. denied 368 U.S. 820, 82 S.Ct. 38, 7 L.Ed. 26. The evidence of appellant's guilt is such that it obviously does not warrant a finding that the conviction was a manifest miscarriage of justice. Meeks v. United States, 5 Cir.1958, 259 F.2d 328.

### 5. MOTION TO APPEAL IN FORMA PAUPERIS

Appellant filed with the District Court a motion to appeal in forma pauperis, which was supported by his affidavit. No response was filed by the Government, and no hearing was had upon the petition, which was summarily denied. Apparently, retained counsel has borne the cost of this appeal under an agreement whereby appellant will reimburse counsel if and when he can.

▌ In the absence of any findings by the District Judge indicating a factual basis for the exercise of his discretion under Title 28, U.S.C. § 1915, we are unable to adequately consider this point on appeal. Appellant's uncontroverted affidavit made out a prima facie case of indigency under the statute. It cannot be said that this appeal is frivolous. We, therefore, remand this case solely for a determination whether appellant's counsel should be reimbursed for the costs of this appeal, as provided by law. Adkins v. E. I. DuPont de Nemours & Co., Inc., 1948, 335 U.S. 331, 69 S.Ct. 85, 93 L.Ed. 43; Kitchens v. D. H. Alderman, 5 Cir.1967, 376 F.2d 262,

The judgment is in all respects affirmed, except that upon remand the District Judge shall determine whether the appeal should be permitted in forma pauperis for reimbursement of appellant's costs.

### ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is

Denied.