## SALINGER v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit. December 12, 1927.

No. 7712.

1. Post Office ⊚⇒50—Evidence that defendant, corporate official, used letter to execute fraudulent scheme to appropriate money, received from sale of stock, to himself, held insufficient for jury (Cr. Code, § 215 [18 USCA § 338]).

Evidence that defendant, vice president of corporation, used letter for purpose of executing fraudulent device or scheme whereby defendant sold corporation's stock to alleged dummy at par, took worthless notes, and resold stock above par value, and appropriated share of excess to himself, instead of delivering it to corporation, in violation of Criminal Code, § 215 (18 USCA § 338), held insufficient to go to jury.

2. Criminal law ⊚⇒753(2)—Unless there is substantial evidence excluding every other hypothesis but that of guilt, trial judge must direct verdict for accused.

Unless there is substantial evidence of facts which exclude every other hypothesis but that of guilt, it is duty of trial judge to instruct jury to return verdict for accused.

3. Criminal law ⊚⇒1159(2)—Where evidence is as consistent with innocence as with guilt, conviction must be reversed.

Where all evidence is as consistent with innocence as with guilt, it is duty of Circuit Court of Appeals to reverse judgment against accused.

4. Criminal law ⊚⇒776(4)—Essentials of instruction on evidence of good character stated.

Where evidence of good character is introduced on behalf of defendant, he is entitled, especially when request is made, to instruction

to effect, first, that purpose and function of such evidence is to raise reasonable doubt; second, that it is entitled to be considered whether effect of the other evidence in case is clear or doubtful; and, third, that when it is considered with other evidence, if reasonable doubt is created as to defendant's guilt, he is entitled to be acquitted.

**5. Criminal law ⬤⟳1173(2)—Failure to charge regarding legal effect of evidence regarding defendant's good character held prejudicial error.**

Instruction that it was proved that defendant's reputation was good, and that jury should consider it along with other matters, was insufficient and erroneous, and failure, when further requested, to charge jury what legal effect of evidence regarding good character was on creation and existence of reasonable doubt of defendant's guilt, *held* prejudicial error.

**6. Criminal law ⬤⟳824(4)—Defendant did not waive failure to properly charge on effect of evidence of good character by failing to request instruction before argument, and by failing to except (rule 25 of District Court).**

Defendant's counsel did not waive failure to properly instruct jury on effect of evidence of defendant's good character by failing to request instruction before argument began, and by failing to except to erroneous charge, and failure to charge under rule 25 of District Court, since it was duty of trial court in first instance when proof of defendant's good character had been made and not denied, without request, to instruct jury clearly on legal effect of that evidence, and legal presumption was that court would do so.

In Error to the District Court of the United States for the District of South Dakota; Joseph W. Woodrough, Judge. Transferred from the Supreme Court of the United States.

Benjamin I. Salinger, Jr., was convicted of violation of Criminal Code, § 215 (18 USCA § 338), and he brings error. Reversed and remanded, with instructions.

B. I. Salinger, of Carroll, Iowa (Robert Healy, of Ft. Dodge, Iowa, and Arthur F. Mullen, of Omaha, Neb., on the brief), for plaintiff in error.

E. D. Barron, Sp. Asst. U. S. Atty., of Sioux Falls, S. D. (Olaf Eidem, U. S. Atty., of Sioux Falls, S. D., on the brief), for the United States.

Before WALTER H. SANBORN and BOOTH, Circuit Judges, and MILLER, District Judge.

WALTER H. SANBORN, Circuit Judge. On May 20, 1922, an indictment was filed in the court below against Fred C. Sawyer, C. H. Burlingame, and B. I. Salinger, Jr., for devising about November, 1917, an alleged scheme to obtain money by alleged false and

23 F.(2d)—4

fraudulent promises from the Midland Packing Company, a corporation, and from the purchasers of its stock, and, for the purpose of executing such scheme or attempting so to do, for causing letters to be sent or delivered by the post office establishment of the United States, in violation of section 215 of the Criminal Code (18 USCA § 338). The indictment, after alleging this scheme, fills 12 printed pages of the record with averments of alleged acts of the defendants, which it declares they did in executing the scheme, and that these acts were a part of the scheme. Following the statements of these acts it contains 14 counts, in each of which it asserts that the defendants, for the purpose of executing the scheme or attempting so to do, did cause to be delivered by mail by the post office establishment of the United States according to the direction thereof a certain letter, a copy of which is set forth in the count. The defendants were arraigned, pleaded not guilty, were tried together, and the jury acquitted defendants Sawyer and Burlingame of each of the offenses charged in the 14 counts, and acquitted the defendant Salinger, Jr., of all the offenses charged in the 14 counts, except that charged in the seventh count, but found him guilty of that offense, so that the only question in this court is: Was there any serious error of law in the trial of the defendant Salinger, Jr., for the offense charged in the seventh count of the indictment.

During the alleged execution of the scheme the defendants organized a corporation, the Midland Packing Company, made defendant Sawyer its president, the defendant Burlingame its secretary and treasurer, and the defendant Salinger, Jr., its vice president and general counsel; they caused this corporation to be duly authorized to have a capital stock of from $8,000,000 to $10,000,-000; they caused this corporation to purchase of Statter & Co., Packers, their packing plant and property at Sioux City, Iowa, for about $500,000, to construct and put in operation a large and expensive modern packing plant at an expense of millions of dollars, and to sell much of its stock to raise the money to pay for the construction and operation of this plant.

Counsel for the defendant challenge the sufficiency of the indictment on many grounds, and we have given their contentions thoughtful consideration; but the sufficiency of this indictment has been twice assailed in and sustained by the Supreme Court, and we are not convinced that it is fatally defective.

Salinger v. Loisel, 265 U. S. 224, 235, 236, 237, 44 S. Ct. 519, 68 L. Ed. 989; Salinger v. U. S., 272 U. S. 542, 547, 47 S. Ct. 173, 71 L. Ed. 398.

After all the evidence had been introduced in this case, after the requests, motions, and arguments of counsel had been heard and considered, the trial court instructed the jury that the general complaint in the indictment was that the plan to buy, reconstruct, and operate the packing plant was a fraudulent scheme to obtain money by cheating and misrepresentation, and that the alleged fraudulent means of executing the plan were: (1) arranging to obtain the Statter & Co. packing plant and property by fraudulent means, so that the defendants should get something for themselves that they were not entitled to receive, but that the evidence was insufficient to sustain a verdict against them on that account; (2) intending to cause and causing purchasers of stock of the Midland Packing Company to buy it by means of false representations that the corporation would make money, that a large packing plant would be constructed and operated, that the stock of the Midland Company would pay 7 per cent. annually, and that this would pay the 6 per cent. interest on the promissory notes of the purchasers of the stock, but that the evidence in this case was insufficient to sustain a verdict of guilty against the defendants on this charge that they made or caused to be made fraudulent representations to sell the stock; (3) paying dividends on the stock of the Midland Packing Company out of its capital, when it had no net earnings, in order to induce subscribers to buy the stock of the corporation in the belief that the corporation was earning dividends, but the trial court instructed the jury that the evidence on this charge was such that they could not lawfully find the defendants or either of them guilty of planning or perpetrating a fraud on account of the payment of the dividends; and (4) payment of too large commissions to the salesmen of the stock for their services, but the court directly charged the jury that they were "not justified in finding that the amount or the percentage was such a one as to show fraud on the part of the defendants or any of them" under this charge.

After withdrawing from the jury all other charges in the indictment, the court charged them that "the only matter submitted to you upon which you may find a verdict of guilty against the defendants, or either of them, is this matter of the premium stock." The charge in the indictment with reference to this stock was that the defend-

ants intended to and did make pretended agreements with pretended subscribers for the stock, who had no means or suitable means, and were unable to pay for the stock, called dummies, for large blocks of stock at par, in order to make it appear that such large blocks of the capital stock had been sold to such purchasers, and to pay themselves the defendants, through Baine & Taylor, sales agents of the corporation, large commissions out of its funds for the pretended sale of said stock, when the defendants had agreed with such dummies that they would not be called upon to pay the notes given therefor by them, and with the intent on the part of the defendants that such stock should be sold at $125 a share or more, and that all the proceeds of such sales above the par value of the stock should be divided among the defendants and appropriated to their own use.

Is the seventh count of the indictment and the evidence pertinent to it sufficient to sustain a finding of the jury that beyond a reasonable doubt the defendant Salinger committed the offense there charged? The charge in this count was that the defendants, in and for executing the alleged general fraudulent scheme set forth in the first part of the indictment, caused this letter to be delivered by the Post Office Department of the United States to Martin Christiansen at Viborg, S. D., on October 23, 1919:

"Midland Packing Company.

"Capital $8,000,000.00

"Fred C. Sawyer, President; B. I. Salinger, Jr., Vice Prest., General Counsel; C. H. Burlingame, Secretary and Treasurer, Sioux City, Iowa, U. S. A.

"October 23, 1919.

"Mr. Martin Christiansen, Viborg, S. D. —Dear Sir: Referring to your sale of October 22d, Mr. Spellings and Mr. Colby have advised us of this sale, and of their promises made to you in connection with its resale, and this is to advise you that the company has been informed and thoroughly understands their promises to you, and that your note will not be sold or negotiated or used as collateral pending its life. Very truly yours, Midland Packing Company, B. I. Salinger, Vice President and General Counsel."

At the proper time counsel for the defendant Salinger objected and excepted to the admission of this letter in evidence, and at the proper time requested the court to instruct the jury to return a verdict in his favor upon this count, and excepted to its refusal so to do.

[1] The alleged scheme charged in the seventh count of the indictment, the evidence concerning which was submitted to the jury, was that the defendants sold stock to dummies at par, took their worthless notes to the corporation for it, agreed with the subscribers that they need not pay these notes, sold the stock again at a price above par, and divided among themselves that part of the proceeds of the second sale in excess of the par value of the stock, when the part the defendants received was the property of the corporation. The substance of the charge and the gist of the offense was the appropriation of this share of the second sale by the defendants to themselves, instead of delivering it to the corporation.

But no evidence has been called to our attention, nor have we found any, that Christiansen was a dummy, a man of no means or of small means. He testified that he had 1,000 acres of land in South Dakota, that he lived on it and had lived on it for three or four years, and was and had been engaged principally in farming, and that he paid $800 or $900 interest on his subscription notes. The direct proof regarding the Christiansen sale of October 22 referred to in the letter was that Spellings and Colby, who were employees or subagents of the Midland Company's agents to sell its stock, on October 22, 1919, obtained the subscription of Christiansen for $100,000 of the stock of the Midland Company at $100 a share, and Christiansen made a written agreement with them that these 1,000 shares should be sold at not less than $150 per share; "all profits derived from said sale," as the contract reads, "to be divided, one-half to said Martin Christiansen and one-half to said Colby and Spellings." Christiansen asked Spellings and Colby for some assurance from the corporation, or some one in authority, and Colby and Spellings informed the defendant Salinger, Jr., of these facts, and he then wrote and sent to Christiansen the letter we have quoted from the seventh count. But the turpitude in the resales or premium sales scheme, which the court submitted to the jury, was in the alleged fact that the premium sales or resales were made by the three defendants; that they agreed among themselves to divide and appropriate to themselves the profits they made thereby, instead of turning those profits over to the corporation. The proof by the testimony of those engaged in the Christiansen transaction, and by the written contract between Christiansen and Spellings and Colby, was that the profit in the proposed sale of Christiansen's stock at an advance price was all to go to Christiansen himself, and to Spellings and Colby, and none to either of the defendants. Counsel has called our attention to no direct evidence, nor have we found any, that the defendant Salinger ever had any interest or share or expectation of interest or share in the proceeds of the contemplated sale of Christiansen's stock, or the profits from the transaction. There is no direct evidence of any division or agreement to divide the profits of this Christiansen sale between the three defendants; there is direct evidence of a written contract that it was all to be divided between Christiansen and Spellings and Colby.

The government alleged in this seventh count that it reaffirmed and realleged all of the allegations of the first count of the indictment, except those relative to the delivery of the letter described in that count, and then it alleged in the seventh count that, having devised the scheme and artifice described in the first count, the defendants for executing said scheme and artifice did cause the post office establishment of the United States to deliver the letter described in that count to Christiansen. But, when the case went to the jury, all parts of the alleged schemes to defraud charged in the indictment, except the scheme to defraud by the defendants making resales at higher prices of the stocks of subscribers who had taken their stock at par, and dividing the profits of these sales among the three defendants, had been expressly taken from the jury. The instruction was clear; it was: "The only matter submitted to you, upon which you may find a verdict of guilty against the defendants, or either of them, is this matter of the premium stock, as I have gone over it with you, and, as to that matter, you should not find either of the defendants guilty, unless as to each particular defendant you are satisfied beyond a reasonable doubt that each and every element of the offense has been proven beyond a reasonable doubt."

While counsel for the government have called attention to much circumstantial evidence which they earnestly argue tends to sustain the verdict against Salinger, Jr., in this case, the written contract, the direct evidence of the parties who agreed to make the resale of Christiansen's stock at an advance price, of the purpose, character, and effect thereof, the absence of any evidence of any agreement that the defendant or any of the defendants should have any interest, share or expectation of profit in or from the Christiansen transaction, and the state of the evi-

dence in this case, under the charge of the court when it was submitted to the jury, have converged with compelling force to convince us that there was not in this case any such substantial and relevant evidence as could sustain beyond a reasonable doubt a finding that the defendant Salinger, Jr., devised or used the letter set forth in count 7 for the purpose of executing the fraudulent artifice, device, or scheme described by the court and submitted to the jury.

[2, 3] Unless there is substantial evidence of facts which exclude every other hypothesis but that of guilt, it is the duty of the trial judge to instruct the jury to return a verdict for the accused, and, where all the evidence is as consistent with innocence as with guilt, it is the duty of this court to reverse a judgment against the accused. Union Pacific Coal Co. v. United States (C. C. A.) 173 F. 737, 740; Vernon v. U. S. (C. C. A.) 146 F. 121, 123, 124; Nosowitz et al. v. U. S. (C. C. A.) 282 F. 578; Sullivan v. U. S. (C. C. A.) 283 F. 865, 868; Siden v. U. S. (C. C. A.) 9 F.(2d) 241, 244; Van Gorder v. U. S. (C. C. A.) 21 F.(2d) 939, opinion filed October 5, 1927.

Aside from this conclusion upon the evidence, the contradictory and irreconcilable verdicts of the jury in this case, the vast and varied mass of evidence on the charges in the 14 counts, some of it relevant to one count and not to others, some of it relevant to others and not to one, the difficulty of the jury's separating either in fact or in mind, the evidence relevant to the charge in the seventh count from that irrelevant thereto, notwithstanding the clear charge of the court that they "should not find either of the defendants guilty, unless as to each particular defendant you are satisfied beyond a reasonable doubt that each and every element of the offense has been proven beyond a reasonable doubt," have raised serious doubts in our minds of the fairness of the trial and conviction of the defendant Salinger on the seventh count of this indictment. For example, the eighth count of the indictment charged the three defendants in substantially the same terms as did the seventh with causing the letter set out in the eighth count to have been delivered by the post office establishment of the United States to P. C. Peterson, at Centerville, S. D., for the purpose of executing the same alleged fraudulent resale scheme set out in the seventh count. The letter, omitting the heading and the signature, read:

"Mr. P. C. Peterson, Centerville, S. D.— Dear Sir: Messrs. Colby and Spellings have advised us of their arrangements with you, which we thoroughly understand. You may be assured that they will carry out their contract."

This letter was signed as was the letter to Christiansen. Colby, one of the selling agents, testified that he and Spellings procured the subscription of Peterson, made a resale agreement with Peterson in their own behalf to the same effect as that with Christiansen, and notified the defendant Salinger of the subscription and the resale agreement. The other evidence relevant to the Peterson transaction was to the same legal effect as that relevant to the Christiansen transaction. The jury acquitted the defendant Salinger of the offense charged in the eighth count, and convicted him of the like offense charged in the seventh count, and acquitted him of the offenses charged in the other 12 counts.

At the trial of this case, after the court had completed its general charge to the jury, it turned to the counsel for the defendant and said: "I will ask counsel for defendant Salinger if you have any further instructions to request." To this request counsel for Salinger answered, among other things: "Defendant Salinger asks the jury to be charged as to the weight to be given evidence of good character and good reputation, in connection with the presumption of innocence and the doctrine of reasonable doubt." Pursuant to this request the court said, speaking to the jury:

"It has been proven and established by the evidence, and there is no dispute about it, that the defendant Ben I. Salinger, Jr., was a man whose reputation for truth and veracity and probity was good. * * * And those are circumstances which the jury should take into consideration along with other matters that have been laid before you." Defendant Salinger's counsel excepted to this charge "as not fully stating what the effect of the law is as to good character and good reputation for honesty, integrity, in connection with the presumption of innocence, and the creation of reasonable doubt."

[4, 5] There was no doubt what the law upon this subject was when this charge was given, and exception to it was taken, as is clearly demonstrated by the decision and opinion of this court in Sunderland v. United States, 19 F.(2d) 202, 214, 215, and the authorities there cited and discussed; Edgington v. U. S., 164 U. S. 361, 17 S. Ct. 72, 41 L. Ed. 467; Rowe v. U. S. (C. C. A.) 97 F. 779; Humes v. U. S. (C. C. A.) 182 F. 485; Searway v. U. S. (C. C. A.) 184 F. 716; Warren v. U. S. (C. C. A.) 250 F. 89;

Winter v. U. S. (C. C. A.) 13 F.(2d) 53; Linde v. U. S. (C. C. A.) 13 F.(2d) 59. That rule was and is that, where evidence of good character is introduced in behalf of a defendant, he is entitled, and especially when a request is made, to an instruction to the effect (1) that the purpose and function of such evidence is to raise a reasonable doubt; (2) that it is entitled to be considered whether the effect of the other evidence in the case is clear or doubtful; and (3) that when it is considered with the other evidence, if a reasonable doubt is created as to the defendant's guilt, he is entitled to be acquitted. 19 F.(2d) 215. There is no doubt that the charge relative to the effect of the evidence of the good character of the defendant Salinger was insufficient and erroneous, and that the failure of the court, when further requested to charge the jury what the legal effect of that evidence was upon the creation and existence of a reasonable doubt of the defendant's guilt of the charge against him, was material, erroneous, and prejudicial to the defendant Salinger, Jr.

[6] Counsel for the government endeavor to escape from the serious effect of these errors (1) by challenging the claim of the defendant that the charge and failure to charge were erroneous and prejudicial to the defendant; and (2) by claiming that defendant's counsel waived and was estopped from successfully asserting these errors because there was a rule of the trial court to the effect that all requests for instructions to a jury must be submitted to the court before the argument to the jury is begun, and that all exceptions to the charge shall be taken in writing or indicated to the court reporter and called to the attention of the court before the jury retires. The first of these contentions has already been considered, and the reasons stated and the authorities cited which convince that it is not tenable. As to the second, it was the duty of the trial court in the first instance, when, as the court itself declared, the proof of the defendant's good character had been made and not denied, without request to instruct the jury clearly upon the legal effect of that evidence. . The legal presumption was that the court would do so, the defendant's counsel

relied upon that presumption and filed no written request upon the subject. In this, in our opinion, counsel were chargeable with no culpable violation of the rule of the court or lack of diligence in complying with it. The court in its general charge gave an erroneous instruction to the jury on the subject, and after it had completed its general charge it said to counsel for the defendant, "I will ask counsel for defendant Salinger if you have any further instructions to request." In answer to this question, counsel for Salinger requested several instructions, some of which the court gave, and some of which it modified or refused. Among these requests for further instructions were those with reference to the effect of the proof of the good character of the defendant, and its effect upon the issues of the innocence or guilt of the defendant and the reasonable doubt of his guilt, which have been stated and discussed earlier in this opinion. Under these circumstances, we find no censurable violation of rule 25 of the court below, and no waiver of the defendant's right, in response to the court's request, after it had completed its charge, to except to the subsequent erroneous charge and failure to charge, and to seek in this court the correction of the errors of law therein substantially prejudicial to the defendant.

There are a great many assignments of error in this case which we have considered, but which we think it is unnecessary to discuss, because no benefit to either party would probably result from extending this opinion to treat them. Our conclusion is that, for the reasons already stated, there must be a new trial of this case. In that trial the evidence not competent, relevant, or material to the issue upon the seventh count of this indictment will not be before the trial jury, and it will not be as difficult for the court and jury to avoid errors of law, and to give a fair trial of the issues between the parties to this case upon the seventh count of the indictment, as it was at the trial we have been discussing.

Let the judgment below be reversed, and let the case be remanded to the court below, with instructions to grant a new trial.