**Leroy Freeman DUNCAN, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

No. 21757.

United States Court of Appeals
Fifth Circuit.

March 7, 1966.

Rehearing Denied April 5, 1966.

Roby Hadden, Tyler, Tex., for appellant.

William Wayne Justice, U. S. Atty., Tyler, Tex., for appellee.

Before RIVES, WISDOM and GEWIN, Circuit Judges.

GEWIN, Circuit Judge.

Appellant, Leroy Freeman Duncan, was convicted by a jury in the United States District Court for the Eastern District of Texas of bank larceny in violation of 18 U.S.C.A. § 2113(a).[1] Here on direct appeal he seeks reversal on the grounds that (1) the evidence was insufficient to sustain the verdict; and (2) the District Court erred in admitting

1. "§ 2113. Bank robbery and incidental crimes

(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, or any savings and loan association; or

Whoever enters or attempts to enter any bank, or any savings and loan asso-

ciation, or any building used in whole or in part as a bank, or as a savings and loan association, with intent to commit in such bank, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank or such savings and loan association and in violation of any statute of the United States, or any larceny—

Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both."

into evidence certain fingerprint cards, the effect of which was to create prejudice in the minds of the jurors.

The evidence was chiefly circumstantial and may be summarized as follows: Appellant and one James Berry became acquainted in a night club in Fort Worth, Texas, during March 1963. They developed a friendly relationship and began to "pal around" together. On July 23, 1963, they traveled together in Berry's automobile to Mount Enterprise, Texas. While the automobile was being repaired, appellant entered the Merchants and Planters State Bank, which is insured by the Federal Deposit Insurance Corporation, and bought a number of travelers checks. This is the Bank which was later burglarized. Berry testified he "might have" burglarized the Bank on that occasion if he had not had car trouble, but that appellant was unaware of his intentions to do so. Four days later, appellant and Berry returned to Mount Enterprise from Fort Worth; and around midnight Berry broke into and entered the Bank and stole several thousand dollars worth of cash, savings bonds, blank cashier's checks and various other items of value.[2] Berry testified he did not know whether appellant ever entered the Bank on the occasion of the burglary or whether appellant was aware of what transpired. However, he also stated that appellant "might have went in." After the burglary the two men returned together to Fort Worth and then separated. The evidence is clear, strong and convincing that appellant was in possession of a good portion of the stolen property immediately after the burglary and that Berry divided "the take" with appellant.

The court overruled appellant's motion for acquittal. The appellant did not testify but he claims that the evidence at most creates only a suspicion and does not establish guilt. It is argued that he and Berry were good friends and that Berry planned and committed the crime without his knowledge even though he was in the car with Berry. He claims that he was intoxicated on the night of the burglary, and that Berry gave him a portion of the stolen property to induce him to remain silent. The Government contends that the jury was amply justified in believing that appellant and Berry planned the burglary, that the first trip to Mount Enterprise was for the purpose of permitting the appellant to observe the outlay of the bank and its facilities, and that he received his share of the stolen property. Moreover, it is argued there was some evidence that appellant actually entered the bank on the night in question.

Appellant first argues that according to the uniform decisions of this Court and particularly our holding in Vick v. United States, (5 Cir. 1954) 216 F.2d 228, the District Court should have granted his motion for acquittal, since none of the circumstantial evidence was inconsistent with every "reasonable hypothesis" of his innocence. We said in *Vick* at 216 F.2d 232:

> "In circumstantial evidence cases, this Court has said repeatedly that to sustain conviction the inferences reasonably to be drawn from the evidence must not only be consistent with guilt of the accused but inconsistent with every reasonable hypothesis of his innocence. Kassin v. United States, 5 Cir., 87 F.2d 183, 184; Rent v. United States, 5 Cir., 209 F.2d 893, 899; McTyre v. United States, 5 Cir., 213 F.2d 65, 67. In such cases the test to be applied on motion for judgment of acquittal and on review of the denial of such motion is not simply whether in the opinion of the trial judge or of the appellate court the evidence fails to exclude every reasonable hypothesis, but that of guilt, but rather whether the jury might reasonably so conclude."

■ We have consistently followed the rule that inferences reasonably to be drawn from the evidence must not only be consistent with the guilt of the accused but inconsistent with every reason-

2. Berry had confessed to his part in the crime before the trial of Duncan.

able hypothesis of his innocence. See Williamson v. United States, (5 Cir. 1964) 332 F.2d 123, footnote 11; Curtis v. United States, (5 Cir. 1961) 297 F.2d 639.

 After a careful examination of all the evidence and taking the view most favorable to the Government,[3] we conclude that the jury had ample evidence to reject appellant's "hypothesis of innocence" as being "unreasonable." Without attempting to determine the factual issues ourselves, it seems unreasonable to conclude that Berry arranged to have appellant accompany him on his two trips to Mount Enterprise, allowed him to witness the crime, and then felt compelled to *give* him a sizeable portion of the stolen property to keep him quiet. When viewed in light of the strong evidence pointing to appellant's actual involvement in the crime, the "hypothesis" weakens even further. For example: (1) appellant and Berry were closely associated; (2) they traveled together to Mount Enterprise four days before the crime; (3) appellant entered the Bank to buy travelers checks; (4) they returned to Mount Enterprise where Berry admittedly burglarized the Bank; (5) Berry refused to deny unequivocally that appellant entered the Bank or aided in the crime; and (6) appellant undoubtedly possessed a sizeable portion of the stolen property subsequent to the crime. The evidence was entirely sufficient to support the verdict of the jury and the trial court correctly denied the motion for acquittal.

Five police fingerprint cards were admitted into evidence because they contained appellant's genuine signature. They were offered for the limited purpose of establishing the fact that he bought the travelers checks at the Bank in question four days prior to the crime, and to prove the authenticity of his signature at the time of purchase. Such evidence supports the conclusion that the appellant was in the burglarized Bank only a short time before the actual commission of the crime. Appellant argues that the cards revealed that he had been arrested by the police on at least five previous occasions and that they poisoned the minds of the jurors. Nowhere on the cards is it expressly revealed that appellant had been arrested, or that he had been charged with or convicted of a crime. The Court carefully instructed the jury to disregard the cards except for the limited purpose for which they were offered.[4]

 Evidence of other arrests or other crimes not covered by the indictment is not ordinarily admissible against a defendant. However, the general rule is that if such evidence tends to prove facts relevant to the crime charged in the indictment, it is not rendered incompetent merely because it also reveals that an arrest may have been made or a crime may have been committed. Under the clear and cautionary instructions of the Court this evidence was admissi-

---

3. As required by Glasser v. United States. 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); McFarland v. United States (5 Cir. 1960) 273 F.2d 417.

4. The court instructed the jury as follows on two different occasions:
 " * * * I will instruct the jury that from the testimony of this witness, or the preceding witness, Young, or any witness that might follow as to having made any fingerprints of this Defendant in this case, you will not draw any inference whatsoever that the Defendant had previously been charged with any crime or any offense of any kind or character."
 
 * * * * *

 "Ladies and Gentlemen of the Jury: The Court wants to instruct you in connection with the testimony of the witness, Mr. Pelcher—the testimony of the witness, Pruitt—the testimony of the witness, Mr. Drake—the testimony of the witness, Mr. Young—and the testimony of the witness, Mr. Whiteman—with reference to taking fingerprints of the Defendant and the Defendant having signed the fingerprint cards—you will not consider that testimony, or any part of the testimony, of those witnesses, or any of them, as any evidence whatsoever of the—that the defendant has ever been charged with or guilty of any offense."

ble. Hardin v. United States, (5 Cir. 1963) 324 F.2d 553; Petroleum Carrier Corp. v. Snyder, (5 Cir. 1947) 161 F.2d 323; Hilliard v. United States, (4 Cir. 1941) 121 F.2d 992; II Wigmore, Evidence, § 416 (3rd ed. 1940).

The judgment is affirmed.