UNITED STATES of America,
Plaintiff-Appellee,

v.

Thomas Neil SCHORR and Richard Alan
Rosenbaum, Defendants-Appellants.

No. 71–2669.

United States Court of Appeals,
Fifth Circuit.

June 20, 1972.

Pat W. Davis (Court Appointed), Allen, Bowles & Davis, Dallas, Tex., for defendants-appellants.

Anthony J. P. Farris, U. S. Atty., James R. Gough, Asst. U. S. Atty., Jack Shepherd, Chief Asst. U. S. Atty., Ellis C. McCullough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before DYER, Circuit Judge, SKELTON,* Judge, and INGRAHAM, Circuit Judge.

SKELTON, Judge:

The facts in this case are set forth in the brief of appellee and we reproduce them as there detailed with certain modifications and additions as follows.

The appellants, Thomas Neil Schorr and Richard Alan Rosenbaum, together with one Clyde Edward Newell, III, were charged in the Brownsville Division of the Southern District of Texas in an indictment of four counts with offenses involving a quantity of one thousand three hundred pounds (1,300 lbs.) of marihuana. The first count charged a conspiracy, the second the smuggling, the third the knowing receipt and concealment, and the fourth the knowing transportation of this lot of marihuana, all in violation of Title 21 U.S.C. § 176a. The third defendant, Newell, pled guilty to the fourth count of the indictment, but he was tried together with the appellants on the remaining counts. The appellants were found guilty on all four counts and Newell on the three counts on which he was tried. Appellant Rosenbaum received sentences of seven years on each count, to be served concurrently, and the other defendants received sentences of five years on each count, to be served concurrently.

The evidence tended to show the following:

At about 10:30 p. m. on December 25, 1970, United States Patrolman Gilbert Lee received information from a confidential source that there was some unusual activity at a place called "Midway Crossing" on the Rio Grande River between Roma and Rio Grande City, Texas. Lee then advised Patrolman Don

* Judge Byron G. Skelton, U. S. Court of Claims, sitting by designation.

Daniels of this information and requested his assistance. Shortly thereafter, Lee and Daniels, each in a government vehicle, began watching Midway Crossing. About 12:15 a. m. on the following morning, December 26, 1970, Lee and Daniels saw a pickup truck turn south from U.S. Highway 83 onto Midway Road and proceed toward the Rio Grande River. Daniels saw the pickup stop at a gate near the Boone LaGrange farmhouse, and its headlights were turned off. A few minutes later, he observed the headlights come on and saw the pickup start back toward U.S. Highway 83, followed by a tank truck about 200 yards to the rear. Lee attempted to block the pickup while Daniels attempted to halt the tank truck. However, the pickup drove around Agent Lee's marked government vehicle, turned onto U.S. Highway 83, and proceeded east at a high rate of speed. Lee noted that the pickup was a red 1959 Ford model, bearing Texas license 1C716, that it had a cattle rack on the bed, and that it was occupied by three males. Lee could not halt the vehicle with his siren or red light, and he lost it after it turned north on a dirt road at the western limits of Rio Grande City, Texas.

In the meantime, Daniels had halted the tank truck after it had tried to turn around. Daniels identified himself to the driver and required him to leave the cab. The driver identified himself as Clyde Edward Newell, III. After getting Newell out of the truck, Daniels found two Browning 9mm automatic pistols (one in a holster) and two Lafayette two-way radios on the seat. A pair of coveralls (with a sweatband in a pocket) was on the floorboard, and three master keys were on the seat. The truck was a 1962 Model 600 Dodge truck with yellow cab and black water tank, bearing 1970 Texas license 6M9608, and it was equipped with a General Electric two-way radio. A search of the vehicle revealed thirty-one cloth-wrapped bundles, each containing paper-wrapped bricks of marihuana, weighing about one thousand and three hundred pounds

gross weight. Daniels placed Newell under arrest and then notified Senior Resident Customs Agent Joseph J. Rizzo, Jr. of the arrest and seizure by radio. Certain items in the truck were seized and held as evidence. These were:

One (1) Lafayette Model Dyna-Comm 5a 2-Way Radio, Serial Number 23386, with 12 Ray-O-Vac 1.5 volt batteries.

One (1) Lafayette Model Dyna-Comm 5a 2-Way Radio, Serial Number 23555, with 12 Ray-O-Vac 1.5 volt batteries.

One (1) Lafayette Microphone that does not fit either of the above.

One (1) General Electric 2-Way Radio.

One (1) Browning 9MM Pistol, Serial Number T295019.

One (1) Browning 9 MM Pistol, Serial Number T295013, and Brauer Brothers Manufacturing Company, St. Louis, Missouri, H3C Leather Holster.

One (1) H. K. Porter, Inc., Cutting Tool.

One (1) Fuller 10″ Pipe Wrench.

One (1) Challenger Model 2-Wratchet Wrench and ¾ inch Challenger Socket.

One (1) Challenger 1660 2-Wratchet Wrench and ¾ inch Challenger Socket.

One (1) pair of Ray-Ban prescription Sun-Glasses.

One (1) Chain and Master Lock A1204.

Three (3) Master Lock Keys and Key Chain.

One (1) Pair of Coveralls containing a Sweatband in the pocket.

At about 12:05 a. m. on December 26, 1970, Senior Resident Customs Agent Joseph Rizzo was advised by the Starr County Sheriff's Department that an accident had occurred at the intersection of U.S. Highway 83 and Midway Road about 9:30 p. m. the previous evening and that the driver of the vehicle, a green 1970 Chevrolet Nova, bearing

1970 Texas license BJV 139, had taken something from the car and then had abandoned the car and fled into the brush. Agent Rizzo recognized the vehicle as being one usually operated by Samuel Franklin Vale. About ten minutes later, Agent Rizzo received a radio transmission from Agent Lee regarding the arrest of Newell and the seizure of the marihuana.

Rizzo then requested Customs Agents Richard E. Braziel and Jack L. Pitts to assist in the investigation and asked them to go to the United States Border Patrol office in Rio Grande City. Rizzo then drove to Midway Road, where the Border Patrolmen Lee and Daniels were waiting with Newell and the Dodge truck.

When Rizzo arrived there, he requested that the prisoner and the truck be taken to the U.S. Border Patrol office in Rio Grande City while Rizzo inspected the abandoned vehicle at the Starr County Courthouse.

Rizzo then drove to the courthouse, where the 1970 Chevrolet was parked. He noted that the car contained an empty radio bracket installed beneath the dashboard. Agent Rizzo also found a U-Haul Company rental contract number 51495290 made out to Edward Hartman, 3501 East 31st Street, Austin, Texas, and a Capitol Chevrolet, Inc. Buyer's Order and receipt made out to John Neil, 500 W. 10th Street, Austin, Texas, telephone number 385-3058. These documents were seized for evidence. Subsequent investigation in Austin, Texas, revealed that the two Browning 9mm pistols seized from Newell had been purchased by Edward Hartman.

At the United States Border Patrol office in Rio Grande City, Texas, Agent Braziel questioned Newell after reading to him his constitutional rights regarding self-incriminating statements and rights to counsel. Newell told Braziel that his full name was Clyde Edward Newell, III; that his address was 205 E. Main Street, Rio Grande City, Texas; that he was born on May 17, 1948, in

Abbeville, Louisiana; and that he was at the time absent without leave from the United States Army. He would not comment on the marihuana found in the truck which he had been driving. Agent Braziel and Patrolman Daniels then took Newell to the Hidalgo County Jail, Edinburg, Texas, where he was turned over to the custody of the chief jailer.

Border Patrolman Lee turned over the truck and the seized marihuana to Agent Rizzo, who followed the truck, driven by Agent Pitts, to Roma, Texas. Before leaving the Border Patrol office, Rizzo asked Lee to send a Border Patrol unit to the A. F. Vale Ranch north of Rio Grande City in order to try to locate the 1959 Ford pickup which had escaped. Lee sent Patrolman Robert Wooten and Barry Dixon to the Vale Ranch, where they found a 1963 Dodge Model 600 truck with a yellow cab and a black tank, bearing 1970 Texas license 6N41, a vehicle almost identical to the 1962 Dodge truck driven by Newell. The appellants, Thomas Neil Schorr and Richard Alan Rosenbaum, were standing outside the ranchhouse when the agents arrived. This information was relayed by radio to Agent Rizzo, who at that time was securing the 1962 Dodge truck in Roma, Texas.

Agent Rizzo and Agent Pitts arrived at the Vale Ranch about 3:00 a. m., where they inspected the truck with the Border Patrolmen Lee, Dixon, and Wooten, and found a welded compartment in the center of the truck, identical to a compartment welded into the water tank on the 1962 truck which Newell was driving which had contained the thirteen hundred pounds of marihuana. Agent Rizzo then asked Schorr and Rosenbaum for their names. Schorr said his name was Thomas Schorr, and Rosenbaum would say only that his name was Richard. Rizzo then advised Schorr and Rosenbaum that they were under arrest, administered a constitutional warning to them, and requested Border Patrolman Wooten to take the prisoners to the Border Patrol office in Rio Grande City, Texas.

A search of the cab of the 1963 Dodge truck by Agents Rizzo and Pitts revealed a green Airway suitcase containing one pair of black boots, a black "T" shirt, a gold shirt with blue stripes, a pair of Levis, a pair of green trousers, a pair of blue socks, a green sock, a brown sock, a slate-colored sock, and a jar of Old Spice Short Cut. Also lying on the seat was an Enco Sales ticket listing 20.0 gallons of gas purchased at Emede Canales' service station at Hebbronville, Texas, dated December 25, 1970. The suitcase was seized for evidence. Also seized from the cab was a white plastic Pool King water hose, and two blue sweatbands with Davis Hardware price tags attached. The 1963 Dodge truck was equipped with an Aerotron 600 Series two-way radio.

Agent Rizzo advised Schorr of his constitutional rights regarding self-incriminating statements and right to counsel in the office of the United States Border Patrol and then questioned him for identification purposes. Schorr stated that his full name was Thomas Neil Schorr; that he resided at 3021 Lawnview, Corpus Christi, Texas; that he was born on November 27, 1947, in Corpus Christi, Texas; and that he presently attended the University of Texas in Austin, Texas. He stated that he did not wish to answer any questions about what he was doing at the Vale Ranch and that he wanted an attorney before he would answer any further questions. A key found in Schorr's possession fit the master padlock on the Vale Ranch gate, as did one of the keys found in the truck driven by Newell. Rizzo advised Rosenbaum of his constitutional rights regarding self-incriminating statements and his right to counsel.

Agent Pitts then questioned Rosenbaum, who stated that his full name was Richard Alan Rosenbaum; that he resided at 1625A West Lake Drive, Austin, Texas; that he was born on January 4, 1947, in Orange, California; that he was unemployed; and that he was a key punch operator. He declared that he did not wish to answer any further questions until he had consulted with his attorney. A key was found in Rosenbaum's possession which fit the suitcase removed from the cab of the 1963 Dodge truck. The key was later seized for evidence.

Customs Agent Braziel and Border Patrolman Dixon transported Schorr and Rosenbaum to the Hidalgo County Jail in Edinburg, Texas, where they were turned over to the chief jailer.

About 8:30 a. m. on December 26, 1970, Customs Agents Pitts and Braziel followed a set of tire tracks from the place where the 1970 Chevrolet Nova had been abandoned after the accident on U.S. Highway 83 and Midway Road. About 75 yards away, they found a General Electric two-way radio lying in the grass. The agents seized the radio and later found that the radio fitted the bracket underneath the dashboard of the 1970 Nova and that the speaker and antenna attachments fitted the radio.

Later the same day, December 26, 1970, Agent Pitts obtained a search warrant for the Vale Ranch from United States Commissioner Laurier B. McDonald. A subsequent search by Agents Pitts and Braziel at 5:00 p. m. on the same day was made at the ranch house, and the following items were seized for evidence:

One (1) Lafayette two-way radio microphone.

Three (3) two-way antennas.

Two (2) Browning leather pistol cases.

One (1) empty pistol holder box.

Three (3) empty one-half volt transistor battery cartons.

One (1) tool box with assorted tools.

One (1) one-half horsepower self-priming water pump.

One (1) water hose for pump.

One (1) empty master padlock box.

On December 27, 1970, Agent Pitts interviewed Mr. Emede Canales, Jr. at the Emede Canales Service Station in Hebbronville, Texas. Mr. Canales told

Agent Pitts that he remembered servicing a truck with a yellow cab and black water tank on the afternoon of December 25, 1970. Mr. Canales identified a photograph of Richard Alan Rosenbaum as the driver of the truck and remembered Rosenbaum asking for directions to Rio Grande City, Texas.

On December 27, 1970, Agent Rizzo opened a Master Padlock, Serial Number A1487, on the A. F. Vale Ranch gate with a master key seized from Clyde Edward Newell, III. Senior Resident Agent Rizzo seized the padlock for evidence and replaced it with a purchased Yale lock.

On December 30, 1970, the Starr County Sheriff's Department advised Border Patrolman Lee that the 1959 Ford pickup, bearing 1970 Texas license 1C716, which had escaped from him on December 26, 1970, was parked in an empty lot in Rio Grande City, Texas. Lee telephoned Rizzo and advised him that the pickup had been located. A subsequent inspection of the vehicle by Rizzo and Lee revealed that the pickup contained an installed General Electric two-way radio. Rizzo then seized the vehicle under the provisions of section 1595a(a), Title 19, United States Code.

Investigation with the Texas Department of Public Safety disclosed the following registration information of the four seized vehicles:

1962 Dodge Truck, 1970 Texas license 6M9608, is registered to Mike Garcia, 1951 Sabine Street, Austin, Texas— No lien.

1963 Dodge Truck, 1970 Texas license 6N41, is registered to Jack Eliott, General Delivery, Austin, Texas—No lien.

1970 Chevrolet Nova, 1970 Texas license BJV 139, is registered to John Neil, 500 West 10th Street, Austin, Texas—No lien.

1959 Ford Pickup, 1970 license 1C716, is registered to John Thomas, 508 West 108th Street, Austin, Texas—No lien.

On January 25, 1971, Mr. Harry Ewing, of the South Texas Communications Service Company, 3411 North 10th Street, McAllen, Texas, inspected the two-way radios installed in the seized 1963 Dodge truck, the seized 1962 Dodge truck, the seized 1970 Chevrolet Nova, and the seized 1959 Ford pickup. All four radios have the same crystal frequency of 161.67 megacycles.

Defendant Schorr testified, and one other witness was called by the defense. Schorr disclaimed any knowledge of the marihuana on the part of himself or Rosenbaum. He also denied any acquaintance with Newell. His testimony was to the effect that he and Rosenbaum were acquainted with a son of the owner of the Vale Ranch and that he and Rosenbaum had a standing invitation to use its facilities, together with keys to gain admittance, and that they had come there innocently on a fishing trip to Lake Falcon. He said he did not know Newell, had never talked with him, and had never seen him until his arrest on December 26, 1970. He denied that Rosenbaum had driven the 1963 Dodge truck found at the Vale Ranch on December 25, 1970, or bought gas for it at the Canales Service Station on that date, because Rosenbaum had been with him all that day while they hitchhiked rides from Austin, Texas, to the Vale Ranch. He said that Rosenbaum put his suitcase down by the steps of the Vale Ranch house and it was there when the officers arrived. He denied that he had conspired or agreed to smuggle marihuana into the United States from Mexico, or that he had ever smuggled it across the river, or that he had ever received, concealed or transported any smuggled marihuana at any time. He denied any knowledge of the marihuana found in the truck Newell was driving and said he had nothing whatever to do with it.

Mr. A. F. Vale, lawyer, rancher and former county judge, who was the owner of the ranch, testified that Schorr had attended the wedding of his son, John Vale, and that he had given Schorr a

key to the lock on the front gate of the ranch so that he could come and go when he pleased for hunting and fishing. He testified that to his knowledge Schorr had been there two or three times on fishing trips; that he had given out 20 or 30 keys to others so they could hunt and fish, and many of them were from the University of Texas; that he only used the ranch house for such guests, as he lived in town. He further stated that he frequently had water hauled to the ranch in water trucks to fill an elevated tank that supplied water to the ranch house. He remembered that on one occasion the water tank truck of one Mat Cummings, now deceased, broke down and he left it at the ranch about two weeks. He said that he had known Newell all his life and that he also had given him a key to his ranch. He kept fishing equipment at the ranch for use by his friends who went there to fish. He said some of his friends to whom he had given keys to his ranch had made duplicates of them and had given them to others and that there might be as many as 50 keys outstanding. He did not object to this practice, as he felt the presence of people at the ranch would protect his property. He mentioned the names of two district judges and the chief of police, who had keys, and also the son of a State Senator and a son of a Texas railroad commissioner, both from Austin, Texas, who had keys. He said that at times there would be as many as 40 or 50 people at the ranch at one time hunting coyotes—they would round them up like cattle. At other times people would hunt quail or white wing doves. At other times, people would fish in his dirt tank or pond. Sometimes five or six families would have a barbeque at the ranch.

Judge Vale also testified that he knew Rosenbaum and had seen him several times.

We have set forth the facts in great detail, because, as shown below, the case must be decided on the sufficiency of the evidence.

■ We have carefully reviewed the charges in the indictment, the evidence and the court's charge to the jury, the verdict, and the judgment of the court, and have concluded that the judgment of conviction must be reversed because the evidence is insufficient to sustain the conviction of appellants Schorr and Rosenbaum.

The most glaring weakness in the government's case against the appellants was its failure to prove beyond a reasonable doubt and to a moral certainty that they entered into a conspiracy with defendant Newell to smuggle marihuana into the United States and to receive and conceal and transport such marihuana, all in violation of the law, as charged in the first count of the indictment. The government relied on circumstantial evidence to prove these charges. We find no evidence, circumstantial or otherwise, to show such a conspiracy existed between these appellants and Newell. The facts show that appellants did not know Newell, had never talked to him, and had never even seen him until all of them were arrested at the separate places shown in the evidence and taken before a magistrate. There was no evidence they had ever been seen together, or that they had ever worked together in any way whatsoever, nor that there was any agreement between them. There was no proof that appellants smuggled the marihuana across the river, nor that they helped Newell smuggle it, if he did. There was no evidence that appellants ever received, possessed, concealed or transported the marihuana or had anything whatsoever to do with it, nor that they had any knowledge of it.

The government relied on widely separated facts which we regard as insufficient to connect or implicate the appellants in the conspiracy charged. These facts were: The appellant Schorr had a key to the Vale Ranch; appellants were at the Vale Ranch at the time Newell was arrested with the marihuana in a water tank truck several miles away; there was a similar tank truck (1963

Dodge) at the Vale Ranch; a witness testified he sold Rosenbaum gas for the 1963 Dodge truck in Hebbronville, Texas, on the day before Newell was arrested with the marihuana (this was denied by Schorr as pointed out above) and there was a sales ticket for such gas in the truck; Rosenbaum's suitcase was in the 1963 Dodge truck (this was denied by Schorr); and the 1963 Dodge tank truck, the tank truck Newell was driving, and the pickup truck that eluded the officers on the night of the arrest all had two-way radios of the same frequency, and each of the tank trucks had a compartment welded into the center of the truck. The marihuana in Newell's truck was found in such compartment. Even if all of these facts were true, considered in the light most favorable to the government, they do not prove the conspiracy charged. Judge Vale had given Schorr the key so he could come to the ranch fishing. Schorr had been there several times before on fishing trips and he testified that was the purpose of the instant trip. This was an exculpatory statement that the government did not disprove. The evidence showed that the 1963 Dodge truck belonged to someone other than appellants. No marihuana was in this truck and there was no evidence that it had ever been in the truck. No key to the truck was found in appellants' possession. There was no proof that the 1963 Dodge truck was in the vicinity of Newell's truck when he was arrested with the marihuana, nor that either of appellants had driven the 1963 Dodge at or about that time. Furthermore, Judge Vale customarily bought water from water tank trucks to fill his elevated water tank and on one occasion such a water tank truck remained at his ranch for two weeks because of engine trouble. It is not shown whether the 1963 Dodge truck was ever used to haul water to the Vale Ranch.

We held in Rent v. United States, 5 Cir. 1954, 209 F.2d 893, 896–897 in a Texas marihuana case where conspiracy was alleged that the evidence as to the existence of the conspiracy was insufficient, saying:

\* \* \* The gist of the offense of conspiracy "is agreement among the conspirators to commit an offense attended by an act of one or more of the conspirators to effect the object of the conspiracy." United States v. Falcone, 311 U.S. 205, 210, 61 S.Ct. 204, 207, 85 L.Ed. 128. "To support the charge of conspiracy, the intent to conspire must be shown." Mackreth v. United States, 5 Cir., 103 F.2d 495, 496.

The evidence in the case before us is totally lacking as to the existence of a conspiracy between the appellants and Newell. The appellants cannot be legally convicted and sent to the penitentiary for five and seven years on mere suspicion or speculation, or on a theory that there was a possibility they might have been involved in the offense charged. See McMillian v. United States, 5 Cir. 1968, 399 F.2d 478; Cohen v. United States, 5 Cir. 1966, 363 F.2d 321, cert. denied, 385 U.S. 957, 87 S.Ct. 395, 17 L. Ed.2d 303; and Kassin v. United States, 5 Cir. 1937, 87 F.2d 183. In the *Kassin* case, Judge Hutcheson, in speaking for the court, said:

\* \* \* In each case, however, where the evidence is purely circumstantial, the links in the chain must be clearly proven, and taken together must point not to the *possibility* or *probability*, but to the *moral certainty* of guilt. \* \* \* [Emphasis supplied] [*Id.* at 184.]

■ In a circumstantial evidence case, one inference cannot be founded upon another to sustain a conviction. See Byrth v. United States, 8 Cir. 1964, 327 F.2d 917; Wesson v. United States, 8 Cir. 1949, 172 F.2d 931. Furthermore, the facts must be inconsistent with every reasonable hypothesis except that of guilt. See Tri-Angle Club, Inc. v. United States, 8 Cir. 1959, 265 F.2d 829, 833; Salinger v. United States, 8 Cir. 1927, 23 F.2d 48. In the case last cited,

the court held that where all the evidence is as consistent with innocence as with guilt, it is the duty of an appellate court to reverse a judgment of conviction against the accused. *Id.* at 52. *See also,* Sykes v. United States, 8 Cir. 1963, 312 F.2d 232, 235.

This court held in Montoya v. United States, 5 Cir. 1968, 402 F.2d 847, 850:

* * * In order to sustain a conviction in circumstantial evidence cases the inferences to be drawn from the evidence must not only be consistent with guilt but inconsistent with every reasonable hypothesis of innocence. Vick v. United States, 216 F.2d 228, 232 (5th Cir. 1964); Duncan v. United States * * * [357 F.2d 195 (5th Cir. 1966)].

Other cases upholding and approving this rule are Rent v. United States, *supra*; Kassin v. United States, *supra*; McTyre v. United States, 5 Cir. 1954, 213 F.2d 65, 67; Williamson v. United States, 5 Cir. 1964, 332 F.2d 123, n. 11; Curtis v. United States, 5 Cir. 1961, 297 F.2d 639; McMillian v. United States, *supra*; and Barnes v. United States, 5 Cir. 1965, 341 F.2d 189.

The inferences to be drawn from the evidence in this case are not inconsistent with every reasonable hypothesis of innocence; and considering them in the light most favorable to the government, which we must do, they are as consistent with innocence as with guilt. Under such circumstances, the government has failed to prove the appellants guilty beyond a reasonable doubt and to a moral certainty, as required by law to sustain their convictions. We conclude that there was insufficient evidence to prove the conspiracy charged in the indictment.

Having failed to prove the conspiracy, the government cannot prevail on the other counts of the indictment, which charged appellants with unlawfully smuggling, receiving, concealing, and transporting the marihuana found in Newell's truck at the time he was arrested. In the absence of such a conspiracy, the acts and conduct of Newell were inadmissible against appellants, as appellants were not connected with them in any way and could not be held responsible for them. There was certainly no evidence that appellants themselves smuggled, received, concealed, or transported the marihuana.

The appellants have complained that the officers engaged in illegal searches and seizures at the Vale Ranch, and that the fruits of these activities were inadmissible against them at the trial. We deem it unnecessary to decide these questions in view of the conclusions we have reached as to the insufficiency of the evidence. Nor do we reach other points raised by the appellee.

We hold that the evidence is insufficient to sustain the judgment of conviction against appellants Schorr and Rosenbaum. The judgment of conviction as to each appellant is, therefore, reversed and rendered, with directions to the district court to enter judgments of acquittal.

Reversed and rendered.